HICKERSON *vs.* BENSON & WORKMAN.

1. A wager on the result of an election authorised by law is not within the meaning of the statute concerning "Gaming," (R. S. 1835, p. 290,) but such a wager is contrary to public policy and sound morality, and is therefore void.

2. Where such a wager is lost, and the money or property has been fairly paid or delivered, action will not lie to recover back the same; but either party may rescind the contract, before the event is known on which the wager depended.

CLARK *and* BELT, *for Plaintiffs in Error.*

1. Verdict was found without sufficient evidence, and court erred in refusing to grant new trial.— See evidence in bill of exceptions.

2. Court improperly refused second instruction asked by plaintiff, that betting upon Presidential election is against our statute of gaming.— Rev. Code, 1835, p. 290, sec. 1, 3; 4 Mo. Rep., 536, Shropshire *vs.* Glascock & Garner; 4 Mo. Rep., 599, Boynton *vs.* Curle, and authorities cited.

3. Court improperly refused, and erred in refusing fourth instruction asked by plaintiff, that a bet on the Presidential election is void.— Bush *vs.* Keeler, 5 Wend., 250; Lansing *vs.* Lansing, 8 John., 454; Brown *vs.* Riker, 4 John., 426; Rust *vs.* Gott, 9 Cowen, 169; Smith *vs.* McMasters, 2 Brown's C. P. Rep. of 1st district of Pennsylvania; Allen *vs.* Hearn, 1 T. R., 56..

4. Measure of damages asked by plaintiff in latter part of fourth instruction is correct.— Mercer *vs.* Jones, 3 Camp., 477; Ingalls *vs.* Lord, 1 Cowen, 240; Kennedy *vs.* Whitewell, 4 Pick, 466; Jacoby *vs.* Laussatt, 6 S. and R., 300; Haiger *vs.* McMains, 4 Watts, 418, 2d vol. Wheaton's Selwyn, title, "Trover," 5 Amer. edit., p. 1417, note D.

5. Court erred in giving all instructions asked by defendants.— See decisions recited on refusal of plaintiff's instructions.

6. According to the genius and spirit of our laws and institutions, as well as upon grounds of public policy, all bets upon elections, and more especially presidential elections, which affects so many and diversified interests, are absolutely null and void.—Phillips *vs.* Ives, 1 Rawle, 36; 9 Cowen, 169, 180; Wroth *vs.* Johnson, 4 Har. and McH., 284; 3 N. H. Rep., 152.

HAYDEN *and* DAVIS, *for Defendants in Error.*

NAPTON, J., *delivered the opinion of the Court.*

This was an action of trover, brought by Hickerson, to recover the value of a horse alleged to have been converted by the defendants to their use.

The plea was, Not guilty. The parties went to trial, and the verdict and judgment were for the defendants.

It appears, from the bill of exceptions taken at the trial, that on the 16th of November, 1840, a bet was made between the plaintiff and defendants, on the presidential election, the terms of which were as follows : The plaintiff bet a certain horse against five hundred dollars, and delivered the horse to the defendants on the following conditions, which were reduced to writing at the time.

" On the first day of March, we, or either of us, promise to pay A. Hickerson, or order, the sum of five hundred dollars, value received. As witness our hands and seals, this 17th November, 1840. 					" JAS. H. BENSON,

" D. WORKMAN."

The conditions of the above note are as follows: " Benson and Workman bet the sum of five hundred dollars, against A. Hickerson's bay stallion *Clifton*, that W. H. Harrison receives, for president, fifty electoral votes more than M. Van Buren. If the said W. H. Harrison does receive fifty electoral votes more than M. Van Buren, the note to be void and of no effect."

On the 23d December, Hickerson notified the defendants in writing, that the horse must be returned, because they (the defendants) had information in relation to the result at the time the bet was made, which he (the plaintiff) had not.

Some testimony was introduced with a view to establish a fraud on the part of the defendants, but the jury found, under the instructions of the court, a verdict for the defendants, and the plaintiff seeks to reverse the judgment, on the ground, that the law was not correctly expounded to the jury by the Circuit Court.

The instructions of the Circuit Court were, in substance, that the bet was not within our statute concerning gaming, and 'that, if the jury were satisfied there was no fraudulent concealments on the part of the defendants, the plaintiff could not recover.

We are of opinion, that the instructions of the Circuit Court were correct. We are not apprized of any rule of construction, or principle of public policy, which could warrant a court in declaring an *election* to be a *game* within the meaning of our statute. It is apparent, that if such a construction could be placed upon this

*Hickerson* vs. *Benson & Workman.*

this act, all wagers whatsoever, not only such as contravene principles of public policy and sound morality, but such as are made on subjects of entire indifference, and events in themselves of no importance, might, with equal propriety, and for similar reasons, be embraced within its provisions. A *horse-race* has been held to be a game or gambling device within the meaning of our statute, but an election is a political institution, essential to the existence and operation of our government, and recognized by the constitution and laws. It is difficult to see how such an institution could have been in the contemplation of the legislature when they enacted laws against games and gambling devices. There was, therefore, no error in the opinion of the Circuit Court on this point.

This bet was, however, clearly against public policy, and consequently void at common law. Whether a bet be made previously to an election, on its event, or subsequently on some collateral matter connected with the canvass, repeated adjudications, both in England and this country, declare such wagers illegal, upon principles of public policy and some morality.—Rust *vs.* Gott, 9 Cowen, 173; Allen *vs.* Hearn, 1 T. Rep., 56; Brown *vs.* Riker, 4 John. Rep., 438.

But the settled rule of law, in such cases, is, for the courts to leave the parties where they find them, on the maxim, "*Potior est conditio defendentis.*" If, however, either party will rescind the contract, before the event is known on which the wager depended, the courts will interfere, on the ground, that the parties are not then *in pari delicto:* the risk has not been determined, and the parties have a *locus penitentiæ.* (Aubat *vs.* Walsh, 3 Taun., 283 ) So, also, where the money or property has not passed from the hands of the stakeholder, the losing party has been allowed to recover. (Vischer *vs.* Yates, 11 John. Rep., 23.)

In the present case, it will be observed, that the wager was not on the final result of the presidential election, but it was on the result of the vote in the electoral colleges.

By the laws of the United States, the colleges meet at the seats of government of the several States on the first Monday of December, and vote; their votes, sealed up, are then transmitted to Washington, and not opened in the presence of the two houses of Congress, until the second Wednesday in February, when the result is legally ascertained and declared. (See Story, Laws U. S., p. —.)

Whatever, then, might be the result of the presidential election, it is plain that the result of the electoral vote is settled by the electoral colleges on the first Wednesday of December, and that event could scarcely have been unknown to the plaintiff on the twenty-third of the same month, when he notified defendants of his intention to rescind the contract.

The judgment of the Circuit Court is affirmed.

TOMPKINS, J., dissenting.