APRIL TERM
1837.

Shropshire
v.
Glascock &Garner

It is error to charge *two* persons with jointly exercising the trade of an auctioneer.

4   536
35a 546

4   536
151  571

4   536
167  283

4   536
98a   704

———◦∘0∘◦———

## SHROPSHIRE v. GLASCOCK & GARNER.

Horse-racing is *a game* within the meaning of our statute "to restrain gaming."

*U. Wright,* for appellant:

This was an action of debt by petition and summons, instituted in the Marion circuit court by plaintiff against defendants, on a bond for the sum of two hundred and fifty dollars. The defendant, after pleading several pleas, which were demurred to, plead a special plea; averring that the bond sued on was executed by defendants to secure the forfeit upon a horse race; and that therefore, the consideration was illegal and void by the statute in such case, made and provided. The plaintiff demurred to the plea, and the defendants had judgment upon the demurrer, and the plaintiff brings the cause to this court by writ of error.

The demurrer is special; but the main question presented for the consideration of this court is—whether the bond is illegal and avoided by any statute of this State?

This involves an inquiry into the true construction of our statute against gaming. See 1 vol. M. Statutes, p. 409.

Since the case of Da Costa vs. Jones, in the time of Lord Mansfield, it has been settled that wagers are recoverable at common law. It is true, that at common law, there are some exceptions to this rule—but these exceptions cannot be investigated in this case, because the pleadings narrow down the controversy to the simple question of statutory prohibition, unless the 5th point made be correct, which alleges duplicity in the plea.

Is a horse race then, prohibited by our statute against gaming? We maintain that it is not. 1st. Because it is not good English, to call a horse race a game.

2nd. Because the distinction between games, and horse

racing, is well understood and recognized in legislature.
See Tate's Digest, p. 275. See also, Kentucky Statutes,
page 634.

3rd. Because there is no inherent vice in horse racing,
so as to make it the policy of the law to prohibit—it be-
ing attended by some solid advantages, especially in its
tendency to improve the stock of the country.

4th. If a horse race should be within our statute against
gaming, this case is not; for, the amount in the bond was
not "won by or upon a horse race"—no race being run,
and *forfeits* are not embraced in the statute.

5th. The plea is bad, for duplicity in this, that it at-
tempts to let in evidence to shew illegality on other than
statutory grounds, and to show a general failure of con-
sideration, which cannot be averred against a bond.

*A. B. Chambers,* for defendants, relied on the following
points:

1st. That a note given as a forfeiture for failing to run
a horse race, is founded on an illegal and void considera-
tion, and a violation of the statute in relation to gaming.
Our statute embraces in substance, the provisions of the
statute of the 16 Char. II. Chap. 7, sec. 3; and the 9th
of Anne, Chap. 14, sec. 1, and containing the same gen-
eral words; under which it has been held, that horse ra-
cing was an illegal wager, and a contract founded upon
it could not be supported in law. See *Chitty* on Con-
tracts, 240 to 243; Cowper 281; Kenyon's opinion in
Good vs. Elliott; 3 T. R. 385; 6 T. R. 499. When
we adopted the 9th Anne, we took it with the same con-
struction then put on it by the English courts.

2nd. The plea properly concluded with a verification.
See 1 Chitty's pleading, 474 and 5.

*T. L. Anderson,* on same side: Cited,
Cowper, 281; Brown vs. Berkeley; Bacon's abridge-
ment, 3 vol., page 344.

*U. Wright,* in reply:
The counsel for the plaintiff maintains that the decis-
ions which have been quoted from England are not in
point.

He maintains that they are all based on the *two* stat-
utes of Charles II. and 9th Anne. That of Charles II.
*expressly* prohibits *horse racing,* and that the statute of
Anne was passed *in aid of Charles'*—see Comyn on con-
tracts, p. 61, top; Bacon, 3rd volume, p. 337. Bacon

quotes the authority from 2 Strange, 1155, as a decision under the statute of Charles II.—see 3 vol. p. 339: and the court in that case, say in *italics*, that a horse race is expressly mentioned in the statute of Charles—(see the abstract of the case.)

In the case cited from Cowper, 281, the court refer to the case of Lyndell vs. Longbottom, and decide upon its authority. Wilson is not accessible, but I have read the case, and it is expressly predicated on the two statutes, Charles and Anne. In confirmation of which, I refer to the argument of Buller, in the case reported in Cowper. He cites the case of Lyndell vs. Longbottom, 2 Wilson, and says, that though the statute 9 Anne does not enumerate the different species of gaming mentioned in 16 Car. II. yet it plainly has reference to, and includes *them all*, under the general words, "other game or games." Therefore, he says in Goodburn vs. Marly, 2 Strange, 1155, *horse racing* was adjudged to be within the statute 9 Anne—though not particularly mentioned in it. If so, it must also extend to *foot races*, for both are *expressly named* in the statute Car. II. The two statutes may be seen at large in Bacon, 3rd volume, pages 337 to 340.— The case in Strange is the first adjudication upon the statutes, and is the authority on which the cases in Wilson and in Cowper turn. The authority from Bacon, p. 344, cited by defendant's counsel, is only a collection of the above mentioned cases. The statute of Charles II. has not been adopted in Missouri.

It may not be possible to lay down any clear, universal rule, as to the character of games not enumerated, which may be embraced under the general words, "game or games." The court felt that difficulty in the case of the State vs. Lowry, 1 vol. M. Dec. p. 723. It however, declared in that case, that Loto was not properly described in the general words, "other gaming table or tables."

I refer to 3rd Bacon, in the margin, p. 340, for the provisions of 12, 13, and 18 of the Georges for an attempt at a rule.

Statement of the case and opinion of the court, delivered by McGirk, Judge.

Shropshire brought an action of debt on a bond, against Glascock and Garner, for $250, in the circuit court of Marion county. The defendants appeared and pleaded several pleas. The 4th plea asserts that the parties agreed to run a horse race for $500; and that it was fur-

APRIL TERM 1837.

Shropshire
v.
Glascock &Garner

ther agreed, that in case either should fail to run said race, then he should forfeit to the other the sum of $250; and that to secure said forfeiture, the bond in question was made and delivered to Shropshire—wherefore, they pray judgment, &c. This plea was demurred to, the demurrer was overruled, and judgment given for the defendants. The only question made by the record, is, whether horse racing is prohibited by the statute of the State. By the act of the General Assembly, passed 1825—see Revised Laws of 1825, 409. It is enacted, "That all promises, notes, bills, bonds, &c., made or entered into by any person, where the whole or any part of the consideration thereof, shall be for money, &c. won by gaming, or playing at cards, dice, or any game or games, shall be void and of no effect."

The defendants by Mr. Anderson, contend, that the words, "won by gaming, or playing at cards, dice, or any other game or games," include a horse race. That horse racing is as much, by reason of these general words, prohibited, as if expressly named in the act; and that this bond, resting on a consideration contrary to the policy of the law, is therefore void.

Mr. Wright, for the plaintiff, contends that the words "other game or games," are only intended to embrace games of like kind, with cards and dice; and that games of the Turf are not intended to be embraced by the act. We are not satisfied that this construction of the act is correct. What game would be of such like kind as to correspond with this construction, we cannot exactly undertake to say. All those games that require a shelter, a house, a deep cellar or dark place, to be successfully performed, are alike, or are of like kind in the place; but in many, the principles of the games may be essentially different from each other. We therefore say, as this construction only makes the meaning of the act more obscure than the act would seem to be without it, it cannot be the true one. The words of the act are very peculiar. It declares all bonds are void where the consideration thereof, shall be money won by gaming.— When these words are used, the sense is complete; and if the statute had said nothing more, it may be safely affirmed, there would have been no doubt, that money won by horse racing is money won by gaming. The words "or playing at cards, or dice," seem to create the ground for the argument of counsel. We think these words are to be understood as synonymous. Why the legislature specified any instruments at all, by which games are

played, we only attribute to the carelessness generally prevalent in all such bodies, with regard to the choice of words. The fact that the legislature intended to use general words, sufficient to embrace all modes of gaming, is made more evident, when we look at the words used together, after the words "or playing at cards, or dice." For then they say, "or any other game or games," intending again, to prohibit all fashions and modes of gaming.

By the statute 22, Charles II. gaming of many sorts was forbidden, and horse racing was expressly mentioned also: but this statute did not make contracts, &c. where the consideration was money won by gaming, void. By the statute 9th Anne, the Parliament again enacted, "That all notes, bonds, &c., made, &c., where the consideration of the same shall be money won by gaming, or playing at cards, dice, tables, tennis, bowls, or any other game or games whatsoever, shall be void."—3 Bacon 337, 338. The Judges of England have determined, that a horse race is within this statute. See Lyndell vs. Longbottom, 2 Wilson, R. 36; Goodburn vs. Marly, 2 Strange, R. 1159. We have looked into these cases, and find the English Judges made their decisions expressly on the words, "other game or games whatever." These cases present a good judicial interpretation of the words of our statute. We are therefore, well satisfied, that a bond given for money won at horse racing, is void; and that a bond given to secure the payment of a forfeiture is a contract against the policy of the law, and therefore void also. Judgment affirmed with costs.

APRIL TERM
1837.

Horse-racing is a *game* within the meaning of our statutes, "to res train gaming."