HAYDEN, Respondent, v. LITTLE, Appellant.

*Contract—Consideration—Gaming.*—It is the policy of the law to discourage bets and wagers as against good morals, and for that purpose it will not lend its aid to enforce contracts predicated upon such considerations.

*Appeal from Monroe Circuit Court.*

*Carr*, for appellant.

This suit was instituted April 8, 1861, eleven months after the race was run. The defendant does not allege that he paid the money over to the party to the bet or wager before the race was run, or previous to the expiration of the time agreed upon by the parties for the determination of the bet.

---

* See preceding case.

Let it be considered that a horse race is a gaming or gambling device within the purview of the act to restrain gaming, and that the respondent may shield himself as stakeholder by virtue of the provision of said act from the payment of this money.

Sec. 10 of said act makes the stakeholder liable to the party who placed the money or property in his hands, both before and after the termination of such bet, on certain conditions, viz: " Provided that no stakeholder shall be liable afterwards unless a demand has been made of such stakeholder of the money or property in his possession, previous to the expiration of the time agreed upon by the parties for the determination of the bet or wager."

The evident intent of this section is, to give a party who has made a bet, the right to rescind the bet or wager at any time prior to the determination of such bet or wager; and if he exercises such right at any time prior to the determination of such bet or wager, and the stakeholder is notified of such recision and a demand made of the stakeholder for the money or property bet or deposited with such stakeholder, he is bound to return such money or property to such party; and the delivery of the money or property afterwards should be no defence to any action brought by the losing party for the recovery thereof. Here is an express limitation upon a party's right to hold the stakeholder liable.

II. But if the court shall be of opinion that the losing party shall have a right, under the statute " to restrain gaming," to hold the stakeholder liable for the money deposited with such stakeholder after the termination of the bet, still the 10th section of said act has prescribed a limit to such liability. What is that limit? Three months from the time the right of action accrued, and not afterwards.

If the statute to restrain gaming shall be held to include betting or wagering on the result of a horse race, then the remedy provided by said statute is exclusive. The stakeholder cannot evoke any other remedy in his defence than what said statute expressly authorizes. His answer totally

failing to bring him within the remedy provided by the statute, fails for this reason to show any legal defence or excuse for the non-performance of the contract confessed by him in his answer. (Mason v. Kennebec & Portland RR. Co., 31 Maine, 215; Stowell v. Flag, 11 Mass. 364; Stevens v. Middlesex Canal, 12 Mass. 446; Cristing v. Baldwin, 4 Wend. 667; Radcliff v. Mayor, &c., of Brooklyn, 4 Comst. 195; 2 Van Santford, Pldgs. 18, 35; 2 N. Y. 552.)

BAY, Judge, delivered the opinion of the court.

This was an action to recover the sum of $250, money won upon a horse race. The facts disclosed upon the trial are substantially as follows: Plaintiff and one Elocious Buckman agreed to run a horse race on the 12th of May, 1860; said plaintiff to run his horse against the horse of said Buckman upon a wager of $250 aside; plaintiff deposited $250 with defendant as stakeholder, and one John S. Buckman deposited with defendant a like amount in behalf of Elocious Buckman. The race took place at the stipulated time, and was won by plaintiff's horse. Some time after the race, but before the institution of this suit, John S. Buckman demanded of defendant the money he had deposited with him, and defendant paid it over to him. This suit is to recover the $250 deposited by Buckman with defendant as stakeholder.

The plaintiff asked the court to instruct the jury as follows:

"1. If the jury believe from the evidence, that the plaintiff and one Elocious Buckman agreed to run a horse race on 12th day of May, 1860, by horses especially owned by them, and that they bet the sum of $250 each that his horse would beat the other's horse in said race, and deposited said sum of $250 each with the defendant as stakeholder, and the whole to be [paid] over by defendant to that one of said parties whose horse should beat the other's horse in said race; and that said race was run in pursuance of said agreement on the 12th day of May, 1860, and the plaintiff's horse

beat said Buckman's horse in said race, and defendant refused to pay over the $250, deposited with him by said Buckman, after the race was determined, they will find for the plaintiff the amount sued for and the interest thereon at six per cent. per annum from the time of such refusal, unless they further believe from the evidence that said Buckman demanded of the defendant the amount so deposited by him with defendant before said bet was determined.

" 2. A horse race is not a gambling device within the meaning of the act to restrain gaming, and betting on the result of a horse race is not prohibited by said act."

Which instructions the court refused to give, and plaintiff duly excepted. The court then, at the instance of the defendant, gave the following instruction:

" 1. If the jury believe from the evidence in the case, that the money mentioned in the petition was so much money placed in the hands of the defendant by Buckman as a wager on a horse race to be run by said Buckman and plaintiff, and that the defendant paid said money back to said Buckman before the institution of this suit, the jury should find for the defendant."

To the giving of which plaintiff objected and excepted.

A verdict being given for defendant, plaintiff filed his motion for a new trial; which being overruled, he appeals to this court.

The only point presented by the record relates to the giving and refusing instructions. The counsel for the appellant made a lengthy argument to show that the answer filed contains no valid defence, because it is not stated that a demand of the money was made of the stakeholder previous to the expiration of the time agreed upon by the parties for the determination of the bet or wager, and that Buckman, if he had any cause of action against the defendant as stakeholder, has lost it by not instituting a suit within the time prescribed by the act to restrain gaming. We are at a loss to see the application of this argument; for this is not a suit by Buckman against the stakeholder to recover the money

by him deposited, but it is a suit by the plaintiff to recover from the stakeholder money won upon a horse race, and which this stakeholder returned to the losing party. In other words, it is a suit to enforce a contract which has for its consideration a wager upon a horse race. The only question is, whether the law will lend its aid to enforce such a contract.

It is well settled that no action will lie upon a contract based upon an unlawful consideration, or which is repugnant to law or sound policy, or good morals: " *ex turpi contractu actio non oritur.*" Kent says: "if a contract grows immediately out of or is connected with an illegal or immoral act, a court of justice will not enforce it."

It has been held by this court that horse racing is gaming within the meaning of our statute and " to restrain gaming," that a note given to secure a forfeiture for failing to run is void. (Shropshire v. Glascock et al., 4 Mo. 536; Boynton v. Curle, id. 599.) There is no conflict between these cases and the case of the State v. Hayden, 31 Mo. 35; for in the latter case it was merely held that a horse race was not a gambling device within the meaning of the 17th sec. of the 8th art. of the Act concerning Crimes and Punishments. The Act to restrain Gaming (R. C. 1855, p. 818) authorizes any person who shall win money or property at any game or gambling device, to recover the same by civil action; and it further provides that all bonds, bills, &c., where the consideration is money or property, won at any game or gambling device, shall be void. And in the 8th section it is declared, that bets and wagers on any election authorized by the constitution and laws of this State are gaming within the meaning of the act; but before the enactment of this 8th section it was held by this court, that though a wager on the result of an election authorized by law was not within the meaning of the statute concerning gaming then in force, (R. C. 1835, p. 290) yet it was void, being contrary to public policy and sound morality. (Hickman v. Benson et al., 8 Mo. 8.)

The policy of the law is to discourage bets and wagers as

being *contra bonos mores*, and one of the methods adopted for that purpose is to refuse its aid to enforce contracts predicated upon such a consideration. This was the view, no doubt, of the law taken by the court below, and hence its ruling with reference to the instructions given and refused.

Judge Dryden concurring, the judgment is affirmed.