ALFRED M. WATERMAN, Appellant, *v.* THOMAS A. BUCK- LAND, Respondent.

### January 31, 1876.

1. Courts of justice will not sit to determine wagers, or to compel parties to pay their bets.
2. What is usually called "an option contract" is a wager.

APPEAL from St. Louis Circuit Court.
*Affirmed.*

*John N. Straat,* for appellant, cited : Good *v.* Elliott, 3 Durnf. & E. 693 ; Morgan *v.* Pebror, 3 Bing. 447 ; Hib- blewhite *v.* McMorine, 5 Mee. & W. 462 ; Johnson *v.* Fall, 6 Cal. 359 ; Kirkland *v.* Randon, 8 Texas, 10 ; Bass *v.*

Peevey, 22 Texas, 295; 4 Zab. (N. J.) 576; 5 Harr. 347; Moran v. Pettis, 3 Scam. (Ill.) 592; Chitty on Con. 418 (ed. of 1848); 3 Scam. (Ill.) 529; 6 Cal. 359.

*A. R. Taylor*, for respondent, cited: Hickman v. Benson, 8 Mo. 8; Hayden v. Little, 35 Mo. 422; Pittz v. Long, 40 Mo. 537; Hook v. Turner, 22 Mo. 333; Moxton v. Gheen, 75 Penn. St. 166; Kirkpatrick v. Bonsall, 72 Penn. St. 168; Gram v. Stebbins, 6 Paige, N. Y. 124.

GANTT, P. J., delivered the opinion of the court.

From the record it appears that, on January 29, 1869, plaintiff and defendant made a wager respecting the rise and fall in the market of mess pork. The speculation covered the period of ninety days; each party placed his memorandum check in the hands of a stake-holder for $1,000. What was called a settlement was to be made at the end of ninety days. The quantity of pork, the rise or fall in the price of which was at risk, was 1,000 barrels. The transaction was called an " option sale." Waterman purported to be the vendor, and Buckland purchaser, of the pork. It was agreed that if, at the end of ninety days, the price had fallen from what it was on the date of the transaction, Waterman should receive the difference from Buckland. If it had risen, he was to pay the difference to Buckland. It was averred that it had fallen, and Waterman claimed $500 as the difference in price. It was alleged that Buckland had refused to pay this sum, and the Circuit Court was asked to determine that he had lost his wager, and to enforce its payment. The Circuit Court sustained a demurrer to the petition on the ground that the contract disclosed by it was illegal and void as being contrary to public policy. The plaintiff appealed to this court, and argues here that courts in England have repeatedly sustained actions to recover money won in a wager; that in this country such actions have been upheld in some of the states; that the statutes of Missouri do not condemn wagers of the kind shown in the petition, and that the matter about which the

parties made their wager is not one inquiry into which is indecent or immoral.

1. We are not influenced by the long series of decisions in England upholding actions on wager contracts. They have never been regarded as good precedents in Missouri. They were so well established, however, in the mother country, that it was thought expedient to destroy their authority by an act of Parliament; and this was accordingly done, early in the reign of Queen Victoria.

2. As little are we moved by the few instances in which the courts of some of our sister States have tolerated such actions; but we wish to remark here that decisions have been quoted from some of these which have been pointedly condemned and overruled by later adjudications. A case supposed to warrant an action to recover money won by wager was cited from the earlier Illinois decisions. The counsel for the respondent refers us to a case in which the supposed authority of that case has been disregarded very recently by the United States Circuit Court in that State, and since the argument of the case at bar. We learn, through the press, that a decision recently made by the Supreme Court of the State of Illinois has completely disposed of "option contracts" in that State, declaring, in substance, that such transactions are not contracts in any proper sense, but mere wagers, which courts of justice will not sit to determine or enforce.

3. While it is true that the wager disclosed in the petition is not one which is punished criminally by the statutes of Missouri, nor even expressly forbidden, we have no doubt that, if the stake-holder had paid over the stake to either party in this matter, the loser could have recovered it back under the provision of chapter 64, Wagner's Statutes (ch. 74, Gen. Stat. of Mo.). Under such circumstances, to invoke the aid of a court to do what the law says the parties themselves shall not do, to any purpose, is an appeal to which no attention is due. It is altogether inadmissible to

infer that everything is moral which the penal law does not forbid.

4. The courts of Missouri have steadily, from the beginning, discountenanced gaming of all descriptions; have enforced the legal penalties against it, wherever applicable, and have refused to allow an action to be brought to recover money won on wagers, to the making of which no penalty has been annexed by law. *Hayden* v. *Little*, 35 Mo. 418; *Shropshire* v. *Glascock*, 4 Mo. 536; *Hickerson* v. *Benson*, 8 Mo. 8. The Supreme Court, in these cases, has condemned all such transactions as "*contra bonos mores*"—as tending to the demoralization of society.

We concur very heartily with the views entertained by the Supreme Court of Missouri, and, being of opinion that the Circuit Court correctly applied to the case before us the principle indicated by the court of last resort, we order its judgment to be affirmed. All the judges concur.