## DAVIS v. LEONARD.

CONTRACT.—*Wager on Result of Election.—Acquiescence.*—Where A. sells and delivers to B. an article of personal property, at an agreed price, the payment of which is to be contingent upon the election of a certain candidate at a pending election, the money to be placed in bank to await the result of such election, and B., instead of depositing the money in bank, as agreed, makes an arrangement with the assistant cashier of the bank, but without the knowledge of said bank, to pay A. the agreed sum upon the election of such candidate, a promissory note being taken by such cashier as collateral security, and A. acquiesces in this arrangement until the result of the election has been publicly announced, it is then too late for him to repudiate his contract upon the ground that the original agreement has not been complied with by B.

SAME.—*Public Policy.*—Such an agreement is a wager upon the result of an election and as such is void, as being in contravention of the statute and against public policy.

SAME.—*Executed Wager.*—By the delivery of the property to B., and A.'s subsequent acquiescence in the mode of payment for it, the wager becomes an executed one on the part of A., and in such case the law affords no relief. It leaves the parties where it finds them.

SAME.—*Agreement to Pay Certain Sum in Any Event.*—An arrangement by

which A. was to receive in any event as much as a certain sum is merely colorable and does not change the real nature of the transaction with reference to its character as a wager.

From the Union Circuit Court.

*J. W. Carnaway* and *J. Yaryan,* for appellant.

*L. H. Stanford,* for appellee.

NIBLACK, J.—This was an action by Samuel W. Leonard against Lewis Davis, for the value of a two-horse wagon, alleged to have been sold to Davis, and to have been worth one hundred and twenty dollars.

The defendant answered in four paragraphs :

1. In general denial ;

2. Payment before the commencement of the action ;

3. That on the 1st day of October, 1876, the plaintiff sold and delivered to the defendant the wagon in the complaint mentioned for the sum of five dollars, and for the further sum of two hundred and thirty-five dollars, if Samuel J. Tilden should be elected President of the United States at the election then pending, and that, before the commencement of the action, the defendant tendered to the plaintiff the sum of five dollars, then brought into court ;

4. That on the 1st day of October, 1876, the plaintiff sold and delivered to the defendant the wagon described in the complaint for the sum of five dollars, and the further sum of two hundred and thirty-five dollars, when Samuel J. Tilden would be elected President of the United States.

After a demurrer had been overruled to the second, third and fourth paragraphs of the answer, a reply was filed in denial of those paragraphs, and thereupon the first paragraph was withdrawn.

The court tried the cause without a jury, and found for the plaintiff in the sum of one hundred and twenty dollars.

Davis v. Leonard.

The defendant moved for a new trial, assigning as causes :

1.   That the finding was not sustained by sufficient evidence ;

2.   That the finding was contrary to law.

But the motion was overruled, and judgment was rendered upon the finding.

Error is assigned only upon the overruling of the motion for a new trial.

On the trial it was made to appear that some time in October, 1876, perhaps about the first of that month, the plaintiff met the defendant and proposed to sell to him a two-horse wagon, estimated and agreed to be worth one hundred and twenty dollars, for the sum of two hundred and forty dollars, to be paid when Samuel J. Tilden should be elected President of the United States—the money to be placed in the Union County National Bank, to await the result of the then pending presidential election ; that the defendant, being then on his way home, intimated that he would accept the proposition ; that the defendant soon afterward returned bringing with him a promissory note, which he held on one John Beard, for $1,000.00, which he placed in the hands of Henry Husted, assistant cashier of the bank above named ; that he then inquired of Husted if he, Husted, would let him, the defendant, have $240.00 upon the note as collateral security, if he should need that amount, to which Husted responded in the affirmative ; that the defendant, at the time or soon afterward, informed Husted of the proposition the plaintiff had made, and of the purpose for which he might need $240.00 ; that it was then agreed by Husted that, in the event of Tilden's election, he would pay the plaintiff $240.00, looking to the note as collateral security ; that the note was not endorsed to the bank, and the bank knew nothing of the arrangement to let the defendant have money upon it; that immediately afterward the parties met at the plaintiff's

shop, and it being apparently understood between them that the necessary arrangements had been made concerning the $240.00, it was further agreed that the plaintiff should in any event have $5.00 out of the $240.00 absolutely, and the remaining $235.00 of that sum when Tilden should be elected; that the plaintiff thereupon let the defendant have the wagon, and the defendant took the wagon away with him; that about the 1st day of March following the defendant tendered to the plaintiff $5.00 in silver coin as the amount due for the purchase-money of the wagon, but the plaintiff refused to receive the money; that afterward, and before the commencement of this suit, the plaintiff demanded the wagon or the sum of $120.00, its alleged value, of the defendant, but the defendant did not either return the wagon or pay the money demanded.

The defendant, in testifying on his own behalf, claimed that, immediately after he placed the note on Beard in the hands of Husted, he called the plaintiff into the bank and explained the arrangement he had made with Husted, and that the plaintiff participated in the conversation by which it was agreed that Husted was to pay him $240.00 in the event of Tilden's election. The plaintiff in his testimony denied that he was in the bank at the time indicated and all knowledge of the arrangement with Husted based upon the Beard note until some time after he had let the defendant have the wagon, when Husted casually informed him of it.

On the contrary, the plaintiff claimed that at his second interview with the defendant concerning the wagon trade, and just previous to the delivery of the wagon, the latter told him that he, the defendant, had put $240.00 in an envelope and had left it with Husted who had placed it in the safe of the bank.

It was further made to appear that the purpose of the parties, in arranging that the plaintiff should in any event

Davis *v.* Leonard.

have as much as five dollars for the wagon, was to obviate, as they supposed, their possible liability to indictment for wagering on the result of the election.

If, as claimed by the plaintiff, he let the defendant have the wagon under the belief that $240.00 had actually been deposited in the Union County National Bank, in accordance with his proposition to sell the wagon, and if, within a reasonable time after he ascertained that said money had not been deposited in that bank, he had demanded a return of the wagon upon the ground that the terms of the contract had not been complied with, and that he had been deceived or misled into a surrender of the possession of the wagon to the defendant, we are not prepared to say that he might not have recovered back the wagon or its value. But the evidence makes the plaintiff appear to have acquiesced in the arrangement which the defendant had made with Husted about the money until after the result of the presidential election of 1876 had been publicly announced. We think it was then too late for him to repudiate his contract upon the ground that the original agreement had not been fully complied with by the defendant.

The agreement entered into between the plaintiff and the defendant was a wager, nothing more and nothing less, upon the result of an election, and as such was void, as being in contravention of a penal statute, as well as against public policy. 2 R. S. 1876, p. 468, sec. 28; Story Contracts, secs. 695, 696, 697, 698 and 699; *Guyman* v. *Burlingame,* 36 Ill. 201; *Ball* v. *Gilbert,* 12 Met. 397.

The arrangement by which the plaintiff was to receive, in any event, as much as $5.00 for the wagon, was a merely colorable one, and did not change the real nature of the transaction with reference to its character as a wager.

By his delivery of the wagon to the defendant and his subsequent acquiescence in the mode of payment for it contingently provided by the defendant, the wager became an

executed one on the part of the plaintiff. In such a case the law affords no relief. It leaves the parties where it finds them. In an effort to obtain relief under or upon a wagering contract, "*potior est conditio defendentis.*" *Freybarger* v. *Simpson*, 11 Ind. 59; *Worthington* v. *Black*, 13 Ind. 344; *Nudd* v. *Burnett*, 14 Ind. 25; *Hickerson* v. *Benson*, 8 Mo. 8.

We are of the opinion that the finding of the court was not sustained by the evidence, and that hence the court erred in refusing to grant a new trial.

This action was not commenced until the 3d day of October, 1877, and does not purport to be prosecuted under the provisions of the 2d section of "An act touching gaming contracts," approved June 11th, 1852. 1 R. S. 1876, p. 508. Hence no question arises as to the supposed applicability of that section to the facts of this case. *The State* v. *Henderson*, 47 Ind. 127; *Frazee* v. *The State*, 58 Ind. 8.

The judgment is reversed, with costs, and the cause remanded for a new trial.