Third National Bank, Respondent, *v.* Addison Tinsley, Appellant.

### February 28, 1882.

1. The statutory provision rendering void all notes given in consideration of money. "won at any game or gambling device," does not apply to a note the consideration of which is a wager upon the future price of grain.

2. If one procures a note on which he is indorser to be discounted for his benefit in a bank of which he is a director, his knowledge as to the illegal consideration of the note will not preclude a recovery by the bank against the parties to the note.

3. Where the holder shows that he received the note in the usual course of business in good faith for value, before maturity, the burden is upon the maker to show that the holder had actual notice of the specific facts that would render it originally void.

Appeal from the St. Louis Circuit Court, Thayer, J. *Affirmed.*

Morrow & Gray and Dryden & Dryden, for the appellant : The consideration for which the notes were given having been shown to be illegal, and the relation that Alexander, the indorsee of the notes, sustained to the bank, raise the presumption that the bank had notice of the illegality of the consideration ; and it was not entitled to recover in the absence of any proof that it did not in fact have such

notice, and the burden of proof devolved upon the bank to establish this fact, which it did not do. — *Hamilton* v. *Marks*, 63 Mo. 167 ; *Johnson* v. *McMurry*, 72 Mo. 278 ; Dan. Neg. Inst., sect. 815 ; *Smith* v. *Livingstone*, 3 Mass. 216. A colorable contract for the sale of personalty, when neither party intends to deliver or accept the same, but merely to pay differences according to the rise or fall of the market, is a mere bet or wager on the price thereof, and is a " game or gambling device " within the meaning of chapter 109, Revised Statutes 1879, and notes executed in consideration thereof are void, by virtue of section 5722 of said chapter. — *Grizewood* v. *Blane*, 11 C. B. 526 ; *Waterman* v. *Buckland*, 1 Mo. App. 45 ; *Williams* v. *Teidemann*, 6 Mo. App. 269 ; *In re Green*, 15 Nat. Bank. Reg. 198 ; *Lyon* v. *Culberson*, 83 Ill. 33 ; *Gregory* v. *Wendell*, 39 Mich. 337 ; *s. c.* 40 Mich. 432 ; *Brua's Appeal*, 55 Pa. St. 294 ; *Rudolph* v. *Winters*, 7 Neb. 125 ; *Kirkpatrick* v. *Bonsall*, 72 Penn. 155.

DYER & ELLIS, for the respondent : "A corporate officer who acts avowedly for himself in a transaction with his corporation is regarded as a stranger to the corporation, dealing as if he held no official relation with it. — 6 South. L. Rev. 816, and cases cited. "Mere private information obtained beyond the range of a director's official functions will not be deemed notice to the bank." — *Mechanics' Bank* v. *Schaumburg*, 38 Mo. 228–244. Dealing in wheat, without a contemplated delivery, is not a " game or gambling device " within the meaning of the Missouri Gaming Act. — Rev. Stats. 1123 ; *Hickerson* v. *Benson*, 8 Mo. 8 ; *Williams* v. *Wall*, 60 Mo. 318.

BAKEWELL, J., delivered the opinion of the court.

This is an action upon certain negotiable promissory notes made by defendant Tinsley to the order of Alexander. The plaintiff is the indorsee and owner of the notes, and claims to have acquired them before maturity for value.

Defendant Alexander made default. Defendant Tinsley, who appeals, alleges that the notes were given for an illegal consideration, and that the plaintiff took them with notice. As a further defence, Tinsley sets up that the only consideration for the notes between the original parties was money won at "a game or gambling device," within the meaning of section 5722 of the Revised Statutes.

The cause was tried without a jury, and the finding and judgment were for plaintiffs.

It appears that the original notes, of which the notes in suit were merely renewals, were given to secure " margins " on the purchase of wheat for future delivery, in certain transactions in which Alexander was the broker of Tinsley. Alexander, however, did not disclose his principal to the persons with whom he dealt for this wheat, nor was Tinsley told who these persons were. The only consideration for the original notes, was a wager contract upon the price of grain ; that is, the losses which Alexander, as broker of Tinsley, paid on bets upon the future market price of wheat, no delivery having been made or thought of. The notes were offered for discount to plaintiff's bank, and discounted by the bank in the usual course of its business, on his indorsement, and for his benefit. At the time of this transfer of the notes to the bank, Alexander was a director of the bank, and, by virtue of that office, a member of its discount board. The evidence, however, shows, and the trial court found, that the bank had no regular discount committee. The president was authorized to pass upon paper without the advice of the directory. If the directors were present, they gave advice on paper offered for discount. But the defendant was not present when these notes were offered. He states that he always staid away when he had paper of his own to offer for discount ; and he did so in this instance.

1. By law (Rev. Stats., sects. 5712, 5713), all notes, etc., when the consideration is money or property " won at any

game or gambling device," are void, and no title passes to the assignee of such a note. The fluctuation in the price of articles of commerce cannot be called a game or gambling device. A horse-race is strictly "a game," and, from time immemorial, has been used as "a gambling device." But a future contingent event does not become a "game" because people may bet upon it. For instance, an election is not "a game or gambling device," though people illegally bet upon elections. *Hickerson* v. *Benson*, 8 Mo. 8. The language of the statute will not bear the strain which appellant would have us put upon it. "Betting upon futures" may be one of the worst forms of gambling; but the legislature did not intend to extend the provisions of this statute, "the central idea of which," Judge Sherwood declares, in *Williams* v. *Wall* (60 Mo. 320), to be "evidently in aid of the statute punishing gambling," to the case of every bet. The words are not susceptible of any such interpretation; and, as appears by the case cited above, they are not so interpreted by the supreme court. The case in 8 Missouri Reports is conclusive against the view that this note is void in the hands of an innocent assignee, who took it for value before maturity, as having for its consideration money won on a gambling device or game.

2. Notice to the director in this case was not notice to the bank, because the bank was dealing with the director in purchasing the note of him. He was not acting, and could not possibly act, in the transaction as the agent of the bank. His knowledge was not, therefore, the knowledge of the bank. It is said that the indorsement of the note by Alexander was, under the circumstances, a vote for its discount. There is nothing in this. If a director procures a note to be discounted for his benefit, by concealment of facts he is bound to disclose to the bank, this does not preclude a recovery by the bank on the note against the parties to it. *Washington Bank* v. *Lewis*, 22 Pick. 31.

3. As illegality in the inception of the instrument was shown by defendant, the burden was on plaintiffs to show that they acquired it in good faith, for value, in the usual course of business, before maturity, and under circumstances which create no suspicion that they knew the facts which impeach its validity. This rule is laid down in these words in *Hamilton* v. *Marks* (63 Mo. 180). This was sufficiently shown when plaintiffs proved that they discounted the note before maturity in the usual course of their business as bankers. "When the general proof is made by the holder that he received the paper before due, *bona fide*, and for value," says the supreme court in *Johnson* v. *McMurry* (72 Mo. 282), "it devolves upon the maker to prove that the holder had actual notice of the specific facts that would render it originally invalid." We do not understand that it was the duty of the bank, after having shown that the note was put in the discount box in the usual way, and accepted for discount before maturity in the usual way, and that the person offering it for discount got the proceeds in the usual way, to go further, and put on the stand every agent of the bank, notice to whom would affect the bank, to show as to each one of these persons, that he knew nothing of the infirmity of the paper.

The judgment is affirmed. Judge THOMPSON concurs ; Judge LEWIS is absent.