Sondheim *et al. v.* Gilbert, Assignee.

No. 14,519.

SONDHEIM ET AL. *v.* GILBERT, ASSIGNEE.

CONTRACT.—*Sale.*—*Future Delivery.*—*Margins.*—A contract for the sale and future delivery of a commodity which may be procured in the market at the proper time, is valid, if it is the intention of the parties, or one of them, that the commodity shall actually be procured and delivered, and this is so, although money may be deposited, as a margin, to secure performance or as indemnity against loss.

SAME.—*Speculative Transactions.*—*Void Contracts.*—*Public Policy.*—If no delivery is contemplated, and the intention of the parties is merely to speculate on the rise or fall of the market, and adjust the account between them by paying or receiving the difference between the contract and current price, the contract is against public policy and void.

PROMISSORY NOTE.—*Innocent Holder.*— *Wagering Speculations.*—*Margins.*— A negotiable note executed for the purpose of paying margins in a speculation in cotton futures, although void as between the parties on common law principles, is valid in the hands of a third person who takes it before maturity, for value and without notice of the purpose for which it was executed, unless declared to be void by statute. For statutes held not to invalidate such a note, see opinion.

SAME.—*Lex Loci Contractus.*—Where a note is executed and made payable in another State, where the transactions of the parties who put the note in circulation are to be carried on, the law of that State must be looked to in determining its validity; and if valid there in the hands of an innocent holder, it will be enforced in this State, unless declared void by our statutes.

SAME.—*Enforcement in this State.*—Commercial paper executed and issued in New York in the course of a speculation in cotton options in that State, will be enforced in this State in the hands of an innocent holder, neither the statutes of that State nor of this State declaring such paper void in hands of such a holder.

SAME.—*Partnership.*—*Commercial Paper Issued by One Partner.*—When a partnership is engaged in a course of business in which the use of commercial paper is appropriate, the firm is liable upon such paper in the hands of a *bona fide* holder, when issued in the firm name by one of its members, notwithstanding it may have been issued in violation of his duty, without the knowledge or consent of the other members.

From the Vanderburgh Circuit Court.

Sondheim *et al. v.* Gilbert, Assignee.

*D. B. Kumler, G. F. Denby* and *J. Ullman,* for appellants. *A. Gilchrist, C. A. DeBruler, A. C. Harris, W. H. Calkins* and *W. C. Wilson,* for appellee.

MITCHELL, J.—This was a suit by Samuel and Henry P. Sondheim, partners doing business under the firm name of Sondheim Brothers, against John Gilbert, assignee of Miller Brothers, insolvents, to establish a claim against the partnership estate of the latter in the hands of the assignee.

It is averred in the complaint that Conrad and Jacob Miller had theretofore been partners doing a general mercantile business in the city of Evansville, under the firm name of Miller Brothers, and that, on the 11th day of December, 1885, they executed their promissory note, payable to themselves in six months after date, in the city of New York, for $7,264.11. It is averred that Miller Brothers afterwards negotiated the note by endorsement in blank, and that, after it passed through the hands of divers persons, the plaintiffs became the owners of the note before its maturity, having paid therefor the full face value, without any notice whatever of the consideration for which it was given. The law of the State of New York, the note having been executed and made payable in that State, is set out in the complaint, and it appears therefrom that notes, drawn in the form of that sued on, are negotiable according to the custom and law of merchants.

The case was disposed of in the court below by a ruling on a separate demurrer to certain answers, which set up substantially the following facts, viz.: That at the date of the execution of the note, the Miller Brothers were engaged in the dry goods business in the city of Evansville, and that Conrad Miller, one of the members of the firm, made an agreement with Morris Ranger, without the knowledge or consent of Jacob Miller, the other member of the firm, that they, Ranger and Conrad Miller, should engage on joint account in speculating in cotton futures upon the New York

cotton exchange; that they agreed to buy, on joint account, fifty thousand bales of cotton to be nominally delivered during some months in the future; and that it was understood and agreed between them that no cotton was to be actually bought, sold, received or delivered, but that, after making pretended purchases, if the price should advance or decline on the New York cotton exchange, there was to be a settlement of the differences accordingly, as the current price might be higher or lower than that nominally agreed upon at the time of the pretended purchase.

It is averred that, in pursuance of the foregoing arrangement, Conrad Miller executed the note sued on, together with a large number of other notes, without the knowledge or consent of his partner, and that the notes so executed were endorsed in blank by Conrad Miller, in the name of Miller Brothers, and placed in the hands of Ranger, to be used by him solely for the purpose of paying or securing losses or margins which were required to be put up in the contemplated transactions, which it is alleged were to be merely gambling or wagering speculations in cotton futures, and that the note sued on was made and endorsed for no other consideration whatever.

In some of the paragraphs of answer which set up substantially the foregoing facts, certain sections of a statute against gaming, and affecting certain contracts and securities, alleged to be in force in the State of New York, are set out.

The court overruled the demurrer to the answers, and, the plaintiffs declining to reply, judgment was rendered disallowing the claim. The plaintiffs prosecute this appeal, and assign for error the ruling of the court in overruling the demurrer to the defendant's answers.

Upon a determination of the propriety of this ruling the judgment of the court below must either be affirmed or reversed.

Whether or not contracts, notes, bills and other securities, growing out of transactions similar to those contemplated by

Ranger and Miller, as disclosed by the facts admitted by the demurrer to the answers, are valid and collectible, has been the subject of much consideration in the courts.   As related to legitimate commercial transactions, and the recognized methods of conducting the mercantile business of the day, the importance of the question can not readily be overestimated.

Formerly the rule was that articles which had no actual or potential existence at the time of the contract, were not the subjects of sale, but this was found to be such an impediment to commerce that some relaxation in the rule was deemed necessary.   It is now established upon indisputable authority that a contract for the sale and future delivery of a commodity of a designated kind or class, which the seller does not own, and which has at the time no actual existence, but which may be supplied by purchase in the market at the proper time, is a valid contract, provided it is the intention of the parties, or of one of them, at the time the contract is made, that the commodity shall actually be procured by the seller, and supplied to the purchaser at or before the maturity of the agreement.   *Cobb* v. *Prell,* 22 Am. Law Reg. (N. S.) 609, and note ; *Crawford* v. *Spencer,* 92 Mo. 498 (1 Am. St. Rep. 745, and note).

In such a case it does not invalidate the transaction that the parties, or either of them, may have deposited money, as a margin, to secure the performance of the contract, or as indemnity against loss in case one or the other fails to consummate his agreement.   As has been said, " present ownership is of less consequence than the intention of the contracting parties."   *Cockrell* v. *Thompson,* 85 Mo. 510 ; *Wall* v. *Schneider,* 59 Wis. 352 (48 Am. Rep. 520) ; *Whitesides* v. *Hunt,* 97 Ind. 191 (49 Am. R. 441) ; *Gregory* v. *Wendell,* 39 Mich. 337 (33 Am. Rep. 390).

While contracts for the sale of property to be delivered in the future are valid, where the parties, or either one of them, actually contemplate a delivery of the subject-matter of the

contract, yet if, under the guise of a contract which has the appearance of validity upon its face, the real intention is merely to speculate on the rise or fall of the market, without any purpose that any property shall be delivered or received, but with the understanding that at the appointed time the account is to be adjusted by paying or receiving the difference between the contract and the current price, then the whole transaction is illegal, as against public policy, and falls under the condemnation of the law.    *Whitesides* v. *Hunt, supra,* and cases cited; *Irwin* v. *Williar,* 110 U. S. 499.

The facts stated in the answer make it clear that the transactions contemplated by Morris Ranger and Conrad Miller were not the actual purchase and acceptance of cotton, but mere speculative wagers upon the price of that commodity from time to time as it might be quoted on the New York cotton exchange.    This was an agreement to engage in mere wild speculation in the nature of gambling or wagering upon the fluctuations in the price of cotton.    Such transactions demoralize and embarrass legitimate trade, and are subversive of all correct business principles, destructive of commercial integrity and morality, and result directly or indirectly in most of the bankruptcies, defalcations, and forgeries which startle and distract business circles.    Between the parties to such a transaction and all others who participate in the specific illegal design, with the intention of aiding in its execution, so as to become principals or accessories thereto, any contract or other security resulting therefrom will be wholly invalid.    But in the absence of a statute in direct terms prohibiting transactions of the character of that in question, and declaring them unlawful, or expressly declaring promissory notes growing out of such a transaction invalid, while the courts will on general common law principles declare such notes invalid between the parties and those who were accessory to the illegal act, yet in order to invalidate a note or other security in the hands of one who advanced money, which the borrower intended to and did

employ in carrying on an illegal enterprise, it has been held that it was not enough to defeat a recovery that the lender knew the borrower's purpose. He must have been in some way implicated as a confederate in the specific illegal design under contemplation. It must have been a part of the contract, or there must have been in some way such a combination of intention between the lender and borrower that the money furnished should be used in aid of and to promote the unlawful enterprise, as that the former became *particeps criminis*. *Tyler* v. *Carlisle*, 79 Maine, 210; *Waugh* v. *Beck*, 114 Pa. St. 422; *Tracy* v. *Talmage*, 14 N. Y. 162; *Arnot* v. *Pittston, etc., Coal Co.*, 68 N. Y. 558.

Thus it was held in *Bickel* v. *Sheets*, 24 Ind. 1, that a contract for the sale of property which the purchaser intended to use for gaming purposes, in violation of a statute, was not void, although the seller was informed at the time of the sale of the purpose for which the property was to be applied. *Cummings* v. *Henry*, 10 Ind. 109; *In re Lister*, 25 Eng. Rep. (Moak) 647, and note; *Feineman* v. *Sachs*, 33 Kan. 621; *Distilling Co.* v. *Nutt*, 34 Kan. 724; *Fisher* v. *Lord*, 63 N. H. 514; *Parsons Oil Co.* v. *Boyett*, 44 Ark. 230. There must be knowledge of and participation in the illegal or immoral purpose.

It is not necessary, however, that we pursue this feature of the case further, as it is conceded upon the record that the note in suit came to the hands of the plaintiffs in the due course of trade, before maturity, for value and without notice of the purpose for which it was executed or drawn. In order, therefore, to uphold a judgment which invalidates commercial paper in the hands of innocent holders, such as plaintiffs are conceded to be, it is essential that a statute should be shown governing the case, which in direct terms declares that transactions such as those here involved are unlawful and that notes given under the circumstances exhibited by the facts in this case are absolutely void.

The principle may be considered as well established, that

when a statute in express terms pronounces contracts, notes, bills, securities and the like, resulting from or growing out of wagering or gambling transactions, which are prohibited by statute, absolutely void, no recovery can be had thereon, and the doctrine that transactions which a statute in direct terms declares to be unlawful, can not acquire validity by the transfer of commercial paper based thereon, which is also under direct legislative denunciation, is fully supported by authority. *New* v. *Walker,* 108 Ind. 365; *Thompson* v. *Bowie,* 4 Wall. 463; *Vallett* v. *Parker,* 6 Wend. 615; 1 Daniel Neg. Inst., sections 197, 807. In such a case the note will be declared void in the hands of an innocent holder, in pursuance of the peremptory words of a statute which embraces in its terms the contract or obligation under consideration. *Town of Eagle* v. *Kohn,* 84 Ill. 292.

The authorities justify the statement that a defendant may insist upon the illegality of the contract or consideration, notwithstanding the note is in the hands of an innocent holder for value, in all those cases in which he can point to an express declaration of the Legislature that the illegality insisted upon shall make the security, whether contract, bill or note, void. But, unless the Legislature has so declared, then, no matter how illegal or immoral the consideration may be, a commercial note in the hands of an innocent holder for value will be held valid and enforceable. *Hatch* v. *Burroughs,* 1 Wood, 439; *Town of Eagle* v. *Kohn, supra; Third Nat'l Bank* v. *Tinsley,* 11 Mo. App. 498; *Third Nat'l Bank* v. *Harrison,* 3 McCrary, 316 (10 Fed. Rep. 243); *Edwards* v. *Dick,* 4 B. & Ald. 212; *Day* v. *Stuart,* 6 Bing. 109; Chitty Bills, * 92; 2 Randolph Com. Paper, section 511.

It is argued, however, in support of the ruling below, that because the note sued on was negotiated in consideration of money advanced with which to prosecute a wagering or gambling speculation, it is, nevertheless, void in the hands of an innocent holder within the provisions of section 4950, R. S. 1881, which declares, in effect, that all notes, bills, etc.,

when the whole or any part of the consideration thereof shall be for money or other valuable thing won on the result of any wager, or for repaying money lent, at the time of such wager, for the purpose of being wagered, shall be void.

The note in suit having been executed and made payable in the State of New York, and it appearing that the alleged illegal transactions contemplated by the parties concerned in issuing and putting the note in circulation were to be engaged in and consummated in the State of New York, the law of that State must be looked to primarily in determining the validity of the contract; the rule in that respect being, that a contract, valid by the law of the State in which it is made and is to be performed, is valid and enforceable everywhere, unless it is clearly contrary to good morals, or repugnant to the policy or positive statutes of the jurisdiction in which it is sought to be enforced.   *Tilden* v. *Blair*, 21 Wall. 241; *Wayne County Savings Bank* v. *Low*, 81 N. Y. 566; *Hawley* v. *Bibb*, 69 Ala. 52; *Stix* v. *Matthews*, 75 Mo. 96; *Swann* v. *Swann*, 21 Fed. Rep. 299; *Burns* v. *Grand Rapids, etc., R. R. Co.*, 113 Ind. 169; *Flagg* v. *Baldwin*, 38 N. J. Eq. 219 (48 Am. Rep. 308); *Hyatt* v. *Bank of Kentucky*, 8 Bush, 193; *Milliken* v. *Pratt*, 125 Mass. 374; *Hill* v. *Spear*, 50 N. H. 253.

A contract, although valid where made, will not be carried into effect if, by the laws of the State whose jurisdiction is invoked, the contract which is sought to be enforced is stigmatized as unlawful, and so prohibited.

Relying upon the invalidity of the note by force of the *lex loci contractus*, the appellee has, as we have seen, pleaded the statute of the State of New York, relating to gaming contracts, in one of the paragraphs of his answer. In the other paragraph he relies upon the statute of our own State to invalidate the note. By section 8 of the New York statute, all wagers, bets, or stakes made to depend upon any lot, chance, casualty or unknown or contingent event, are declared to be unlawful, and all contracts for or on account of

any money, property or thing in action so wagered, bet or staked are declared void. The other section declares, in effect, that all securities, any part of the consideration of which is money won by playing at any game, or by betting on the hands of such as do play at any game, or to repay any money knowingly lent at the time and place of any such play to any person so playing, shall be utterly void. This last section can have no possible application to a transaction such as that disclosed by the facts in the present case. It would be an unwarranted perversion of common and correct speech to hold that the consideration of a note which had been executed in order to obtain money with which to purchase options, or to put up as margins in cotton speculations, was money won by playing at a game or by betting on the hands of others who do play, or to repay money lent at the time and place of such play. However much dealing in options may resemble gambling or betting, and demoralizing and pernicious as it may be, it can not, with any degree of propriety, be said to be winning or losing money by playing at or betting upon any game, within the meaning of the statute. *White* v. *Barber,* 123 U. S. 392.

Statutes involving penal consequences can not be extended by construction so as to include acts not in terms forbidden, merely because of their resemblance to the acts prohibited, or because they may be equally demoralizing and injurious. *Shaw* v. *Clark,* 49 Mich. 384 (43 Am. Rep. 474).

The purpose of the Legislature in enacting the statute was to avoid securities, any part of the consideration of which was money won by playing at any game, etc. The words of a statute are not to be enlarged by intendment, so as to extend beyond the mischief contemplated, where such a construction would be injurious to innocent third persons. A statute ought not to be enlarged by mere construction, so as to permit the very persons guilty of the offence prohibited to retain money obtained contrary to the statute from third per-

sons guilty of no violation of law whatever. *Edwards* v. *Dick, supra.*

The statutes against gaming, which render all wagers, bets and stakes unlawful, and avoid all contracts for or on account of any money wagered or bet, or any notes or other securities, when the whole or any part of the consideration thereof shall be for money won or lost on any game or wager, and statutes which make it a criminal offence to bet upon any game or the like, although not applicable in terms to the purchase of options, are sufficiently indicative of the policy of the law, as respects mere wagering contracts, of whatever description or name, to require the courts to pronounce all such contracts and securities invalid in the hands of those who were implicated in violating public policy.by specifically aiding or directly participating in the furtherance of such transactions. They do not, however, go to the extent of destroying commercial securities in the hands of innocent holders for value, even though such securities may have had their inception in a transaction thus condemned.

In respect to section 8, above referred to, it may be said the distinction between contracts for or on account of any money, etc., wagered, bet or staked upon any game, and securities, bills, notes, etc., any part of the consideration of which shall be money won or lost by playing at any game, etc., is obvious.

The contracts mentioned are the agreements of the parties, by which they undertake beforehand to bind themselves to pay or deliver to the winner the money, property or thing wagered, bet or staked on the game or contingent event. These are declared unlawful and void, and so they are, in whosesoever hands they may be found. The things in action, notes, bills, securities, etc., referred to in the other section, are the evidences of indebtedness given for money won or lost by playing at any game, or by betting on the hands of those who play, after the event, or for money knowingly lent at the time and place of such play to a person so play-

ing, and these are declared to be utterly void, and so they are, without regard to their form or the fact that they may be in the hands of an innocent holder. *City of Aurora* v. *West*, 22 Ind. 88; 1 Daniel Neg. Inst., section 807 ; Chitty Bills, 92 ; *New* v. *Walker, supra; Greenland* v. *Dyer*, 2 Manning & Ryl. 422 ; 2 Randolph Com. Páper, section 511.

The note sued on does not fall within the terms of either section of the New York statute. The paper was made by, and was payable to, Miller Brothers. It was endorsed by them, or in their name, and delivered to Ranger, who advanced no consideration for it, but negotiated it to persons who took it for full value in the regular course of business, without notice. Until the paper was negotiated for a consideration it had no legal inception as a promissory note. In the hands of the parties to the illegal transactions contemplated, it was not a note given upon an illegal consideration, but it was a paper without any consideration, signed merely for purposes of accommodation. After it was negotiated it became a promissory note, the consideration of which was money advanced by persons who had no notice of the illegal purpose for which the parties contemplated using it, and who were in no way or sense parties implicated in the illegal confederacy.

Having reached the conclusion that the statutes of the State of New York do not, in terms, render void mercantile notes, executed in consideration of money, which the parties receiving the money intended to embark in gambling speculations on the stock market, it only remains that we say that the statutes of our own State, already referred to, indicate such a coincidence in the policy of both States as that the courts of this State will not hesitate to enforce the liability of a maker of a note such as that involved in the present case in the hands of an innocent holder.

It is not necessary that we should remark further upon the effect of the Indiana statute, as applied to notes growing out

Sondheim *et al. v.* Gilbert, Assignee.

of transactions such as that under consideration, when such notes are executed and payable in this State.

It is enough to say that we are not disposed to indulge in a forced and strained construction of the language of our own statute, in order to reach the conclusion that to enforce payment of a commercial note, in the hands of an innocent holder, which is not within the inhibition of the statute of the State where the note was executed and made payable, would be either opposed to public morals or violative of the policy or law of this State.

It appears from the complaint that the note came to the hands of the plaintiffs in the usual course of business, for value, without notice of any defect in the consideration. The contention that the firm of Miller Brothers is not bound because the paper was issued by one of the partners without the consent of the other, in a matter outside the scope of the partnership business, is, therefore, unavailing.

It is quite true that paper issued in fraud of the rights of the firm, by a member of a commercial partnership, upon a consideration outside of the scope of the firm business, while it remains in the hands of one affected with notice, or in whose hands it is subject to like defences as in the hands of the payee, is not enforceable against the partnership. *Irwin* v. *Williar, supra; Graves* v. *Kellenberger,* 51 Ind. 66.

When, however, a partnership is engaged in a course of business in which the use of commercial paper is appropriate, the firm is liable upon such paper, in the hands of a *bona fide* holder, issued in the firm name by one of its members, notwithstanding it may have been issued in violation of his duty by one of the firm without the knowledge or consent of the other members. *First Nat'l Bank, etc.,* v. *Morgan,* 73 N. Y. 593; *Smith* v. *Collins,* 115 Mass. 388; Lindley Partnership, 131.

These conclusions lead to a reversal of the judgment. The judgment is accordingly reversed, with costs.

Filed Nov. 27, 1888; petition for a rehearing overruled Feb. 22, 1889.