## LANCASTER ET AL v. McKINLEY.

[No. 4,470. Filed June 18, 1903. Rehearing denied January 5, 1904. Transfer denied June 29, 1904.]

GAMING.—*Recovery of Money Lost.—Bucket-Shop Transactions.*—Dealing in options upon any kind of property is not a game within the meaning of §6676 Burns 1901, and an action can not be maintained under such statute for the recovery of money lost in bucket-shop transactions.

From Miami Circuit Court; *R. J. Loveland*, Special Judge.

Action by Franklin P. McKinley against William C. Lancaster and another. From a judgment for plaintiff, defendants appeal. *Reversed.*

*A. G. Smith, C. A. Korbly, Jr., Bernard Korbly, W. C. Bailey, C. A. Cole* and *F. D. Butler*, for appellants.
*Roscoe Kimple*, for appellee.

HENLEY, J.—The only question in this case is as to the sufficiency of the complaint. It is alleged in the complaint that the L. A. Kinsey Company, a corporation, and one William Lancaster owned and operated at the town of Converse, Indiana, what is commonly known and called a "bucket-shop," being a place where wheat, corn, and pork, and other provisions and grain were bought and sold on margins; that said appellants permitted persons to buy and sell such wheat, corn, and provisions upon options, the profits or losses to be determined at the settling time by the rise or fall of the prices of such commodities in the Chicago

or other markets, it not being intended at any time that the commodities so purchased or sold should in any event be delivered. It is averred that the appellee patronized the appellants' place of business, and lost in transactions with appellants the sum of $1,000 by wagering with the appellants, at their said place of business, on options on wheat and other grain; the settlements between appellants and appellee in each instance being made upon the difference occasioned by the rise or fall of the prices of the grain in the Chicago market, and no actual wheat or grain having at any time been delivered or intended to be delivered by or to either party to the transactions.

It is provided by §6676 Burns 1901 that "if any person by betting on any game, or betting on the hands or sides of such as play at any game, shall lose to anyone any money, or valuable thing, and shall pay or deliver the same, or any part thereof, the person so losing, and paying, or delivering the same, may, within six months next following, recover the money or other valuable thing so lost and paid or delivered, or any part thereof, with costs of suit, by action founded on this act, to be prosecuted in any court having jurisdiction thereof." It is the contention of the appellant that this statute does not cover and embrace such losses as are described in appellee's complaint; in other words, that money lost in bucket-shop deals can not be recovered under the Indiana statute.

The exact question presented in this appeal was passed upon by Baker, J., in the case of *Boyce* v. *O'Dell Commission Co.,* 109 Fed. 758, where it was said: "A bucket-shop does not, of itself, constitute a game any more than a pack of cards or box of dice constitutes a game. The game consists in playing with or using the cards or dice to determine a bet or wager. To determine whether or not a bucket-shop is used as a means or system of playing a game, we must look to the complaint, and ascertain what is alleged

to have been done by means of the bucket-shop. It is alleged that in the 'bucket-shop game bets and wagers are and were made upon transactions for fictitious delivery in the future upon options;' 'that the form was carried on and the bets and wagers were made in the form of pretended and fictitious contracts of sale or purchase for future delivery of property, with the intention and understanding of both parties to the contracts that no property should be delivered;' 'that settlement should be made between plaintiff and defendant by merely paying the difference between the market price at the time of settlement, or at the time of the pretended maturity of said pretended and fictitious contracts of sale, and the prices agreed between plaintiff and defendant at the time when such bet or wager was made.' Thus it is manifest that the bets or wagers were laid on the future market price of the commodity, and the market price as it went up or down determined the result. The 'options,' 'margins,' 'futures,' and 'fictitious contracts,' are simply means used in carrying on the bet or wager. The bet or wager was not laid upon any one or all of these things. They may have been employed as the method or system of carrying on the bet or wager on the rise or fall of the market, but none of these was the thing upon which the bet or wager was laid. The wagers were laid upon the future 'market price' of a commodity, and not upon any of the instrumentalities employed in carrying on the bet or wager. The 'market price' was the thing upon which the bets or wagers are alleged to have been laid. Betting on the future market price of a commodity is not betting on a game. It is betting on an uncertain future event, but it no more resembles a game than does betting on the result of an election, upon a principle of law, the result of a lawsuit, or upon the age, religion, sex, or marriage of a person.

"It is obvious that the acts of 1824, 1838, and 1852 were not intended by the lawmakers to embrace bets or wagers on the future market price of commodities, for the reason

that this species of betting or gambling was then unknown. This consideration is entitled to much weight in the construction of the statute. It is not, however, decisive, for, if betting on the future price of a commodity fairly falls within the meaning of the word 'game' as used in the statute, it must be held to be within the statute. But we think it clear that the word 'game' can not, without the perversion of common and correct speech, be construed to embrace a bet or wager on the market price of a commodity. The scope of the statute in reference to the maintenance of an action to recover money or property lost by playing or betting on a game has been passed upon by the Supreme Court of this State several times."

Mitchell, J., in the case of *Sondheim* v. *Gilbert,* 117 Ind. 71, 5 L. R. A. 432, 10 Am. St. 23, said: "However much dealing in options may resemble gambling or betting, and demoralizing and pernicious as it may be, it can not, with any degree of propriety, be said to be winning or losing money by playing at or betting upon any game, within the meaning of the statute."

We think these cases settle the question presented by this appeal. Dealing in options upon any kind of property is not a game. A bucket-shop is not a mechanical device. It is not like a roulette table, dice, a spindle, or a pack of cards. In a transaction controlled by the future price of grain, stocks, or provisions, it will be presumed that neither party has control of the market price, and that the price will be changed, if changed at all, through the operation of the natural law of supply and demand.

The courts of Ohio, Illinois, and Tennessee have held that money lost in bucket-shop deals may be recovered, but the statutes of those states are broad enough to cover such transactions, and do not limit the recovery to money lost on a "game."

The judgment is reversed.