## MIDLAND STEEL COMPANY v. CITIZENS NATIONAL BANK.

[No. 4,709. Filed November 23, 1904.]

1. BILLS AND NOTES.—*Execution.*—*Complaint.*—*Necessary Averments.*—Where a complaint on a promissory note alleged that defendant, a corporation, adopted and used the style of "R. J. Beatty, President," in which to execute notes in the usual course of its business, and that such defendant in such name "executed" the note in suit, such complaint shows the formation of a complete contract, and it was not necessary for such complaint to show a promise to pay when a copy of the note was set out, or to show that such note was executed in the usual course of business, or that it was executed for a debt of the corporation, or to show that such note was "signed," since "execution" includes signature as well as delivery. p. 110.

2. SAME.—*Payable in Foreign State.*—*Law Merchant.*—*Presumption.*—There is, strictly speaking, no general law merchant peculiar to any particular state, but the presumption is that the rules thereof are the same everywhere, the custom of merchants being similar over the commercial world. p. 112.

3. SAME.—*Foreign Law.*—*How Proved.*—Where it is claimed that the note in suit is governed by the laws of a foreign state, it is not necessary that such foreign law should be statutory, since our statute

Midland Steel Co. *v.* Citizens Nat. Bank.

(§484 Burns 1901, Acts 1881, p. 240, §342) provides that the un-written or common law of one of the United States may be proved as a fact in the courts of this State.   p. 113.

4.   BILLS AND NOTES.—*Payable in Foreign State.*—*What Law Gov-erns.*—A note executed in Indiana and made payable in a bank in a foreign state, is governed by the laws of such foreign state.   p. 113.

5.   SAME.—*Law of Foreign State.*—*Presumption.*—*Decisions of For-eign State on Law Merchant.*—Where a note is governed by the law merchant of a foreign state, the presumption is that such law mer-chant is the same as in this State, but the decisions of the highest courts of such foreign state in such case are binding, as to what that law is, on the courts of this State.   p. 114.

6.   SAME.—*Complaint.*—*Law of Foreign State.*—*Sufficiency.*—Where, in an action on a promissory note governed by the laws of a foreign state, the complaint alleges, that it is the common and unwritten law of such foreign state, established and adjudicated by the highest courts of such state, that such note as· set out is governed by the law merchant and is negotiable, and that a purchaser for value, with-out notice, before maturity, and in due course, takes such note free from any defenses, such complaint is sufficient as to such foreign law.   p. 114.

7.   SAME.—*Answer.*—*Ultra Vires.*—*Failure and Want of Considera-tion.*—In an action on a note governed by the law merchant, executed by a corporation, answers of *ultra vires,* want of consideration and failure of consideration are all bad as against an innocent holder for value.   p. 114.

8.   RES JUDICATA.—*Law of Case.*—*Former Appeal.*—The law as laid down on a former appeal is the law of the case all the way through, but only to the extent that the facts remain the same.   p. 115.

9.   EVIDENCE.—*Depositions.*—*Foreign Notary.*—Where a deposition was taken upon notice before a notary public in a foreign state, and such notary certifies that the witness was duly sworn; that his testi-mony was reduced to writing by her; that it· was taken at the time and place specified; that defendant appeared by attorney, and such certificate was signed by such notary, and her seal was attached, a motion to suppress for the reason that it did not appear that by the laws of such foreign state a notary public had any authority to take depositions or administer an oath  was properly overruled, since it appears that such notary has complied with our statute (§464 Burns 1901, Acts 1881, p. 240, §327) which furnishes the rules and meth-ods for taking depositions.   p. 116.

From Henry Circuit Court;  *J. M. Morris,* Judge.

Action by the Citizens National Bank of Kokomo against the Midland Steel Company.  From a judgment for plain-tiff, the defendant appeals.  *Affirmed.*

*Ryan & Thompson, B. K. Elliott, W. F. Elliott* and *Frank Littleton,* for appellant.

*J. C. Blacklidge, C. C. Shirley, Conrad Wolf* and *Forkner & Forkner,* for appellee.

ROBINSON, J.—Suit by appellee, as indorsee upon a promissory note payable at a bank in Pittsburg, Pennsylvania, to the order of the Muncie Land Company. This is the second appeal *(Midland Steel Co. v. Citizens Nat. Bank* (1900), 26 Ind. App. 71). The note in suit is as follows: "Midland Steel Company. $2,000. Muncie, Indiana, April 23, 1896. Four months after date we promise to pay to the order of the Muncie Land Company $2,000, value received, negotiable and payable without defalcation or discount, at the Union National Bank, Pittsburg, Pa., with interest at six per cent. per annum from date. R. J. Beatty, president." The amended complaint avers that appellee is a banking corporation at Kokomo, Indiana; that appellant is a manufacturing corporation organized under the laws of Indiana, and with its office and place of business at Muncie, Indiana; that prior to the execution of the note in suit appellant adopted the name and style of R. J. Beatty, president, in and by which to execute the commercial obligations, bills of exchange, and promissory notes in the usual course of appellant's business; that, on the date named, appellant, by and in the name of R. J. Beatty, president, executed to the Muncie Land Company the above note, whereby appellant promised to pay the land company the amount named as therein specified; that after the execution of the note, and before it became due, the Muncie Land Company sold, transferred and indorsed the same, in writing, and for a valuable consideration, to appellee; that appellee purchased the note in the usual course of business, without notice of any defense; that at the time the note was executed, and up to the present time, the note was and is negotiable under the rules of the law merchant, as the law was determined and adjudged by the highest judicial

tribunals of Pennsylvania, and that the indorser thereof, before maturity, in the usual course of business, and without notice of any defense, took the same free from all defenses, and that, under such laws, appellee so held the note; that at the maturity of the note appellee presented the same for payment at the Union National Bank of Pittsburg, where the same was payable, and payment was refused; and that thereupon appellee caused the note to be duly protested.

1.    It is first argued against the sufficiency of the complaint that it is not averred that the note was executed by appellant in the usual and ordinary course of its business, nor that it was executed for a debt of the corporation, nor that the Muncie Land Company or the appellee took it as the note of the appellant.

The complaint avers that, at and prior to the execution of the note in suit, appellant adopted and used the name and style of R. J. Beatty, president, in and by which to execute notes in the usual and ordinary course of its business; that, on the date named, appellant, by and in the above name, "executed and delivered to the Muncie Land Company" its promissory note, a copy of which is set out in the complaint; that, by the terms of the note, appellant, by the above name, promised to pay the land company the sum mentioned, for value received; that after the execution of the note, and before it became due, the payee, for a valuable consideration, sold and transferred the same by written indorsement to appellee, who took the same in the usual course of business, without notice of any defenses thereto.

It is seen that it is averred that appellant executed the note, which implies both a signing by appellant and a delivery by appellant. In that respect the complaint shows a complete contract. *Nicholson* v. *Combs* (1883), 90 Ind. 515, 46 Am. Rep. 229; *Prather* v. *Zulauf* (1871), 38 Ind. 155. Where a pleading avers the execution of a promissory note, and gives a copy, it need not otherwise show a promise to pay. *Reynolds* v. *Baldwin* (1884), 93 Ind. 57.

An averment that the note was executed renders an averment that the note was signed surplusage. *Jaqua* v. *Woodbury* (1892), 3 Ind. App. 289. A corporation may contract a debt or execute a note when necessary in furtherance of its legitimate objects. It is averred that when the note was executed appellant was a corporation. Unless the contrary appears, it must be presumed that it exercised the power in a legitimate way. We fail to see the necessity of an averment that the note was executed in the usual course of business. Nor was it necessary to aver that it was executed for a debt of the corporation. It is averred that appellant executed the note by the name of R. J. Beatty, president, and the note states it was for value received. In *Second Nat. Bank* v. *Midland Steel Co.* (1900), 155 Ind. 581, each of the several paragraphs of complaint was held sufficient. The note sued on in that case and the note in the case at bar are the same, except as to the date and time of payment. We do not understand that case to hold that the averments contended for by appellant are necessary. See, also, *Midland Steel Co.* v. *Citizens Nat. Bank* (1901), 26 Ind. App. 71.

It is also argued that the law of Pennsylvania, where the note is payable, is not well pleaded. The note sued on is not governed by the law merchant. It is not payable at a bank in this State, and is subject to defenses in the hands of a *bona fide* holder for value. It is, no doubt, true that the complaint, aside from any averments as to the law of Pennsylvania, states a cause of action upon the note as a non-negotiable instrument. But if the complaint is held good upon that theory only, the demurrers to appellant's answers should not have been sustained. This is the effect of the ruling upon the former appeal. *Midland Steel Co.* v. *Citizens Nat. Bank, supra.* However, the theory of the pleading is that the note is negotiable under the laws of the State of Pennsylvania, and it must be good upon the theory upon which it proceeds, or it will not be good at all.

In pleading the Pennsylvania law the complaint avers "that at the time said note was executed as aforesaid, and at the time it was indorsed and taken by this plaintiff as aforesaid, and for many years prior thereto, and up to the present time, it was and is the common and unwritten law of the state of Pennsylvania, as ruled, established and adjudicated by the highest judicial courts of that state, that said note was and is negotiable according to and under the rules of the law merchant, as determined and adjudicated by the highest judicial courts of said state, and that the indorsee thereof before maturity, in the usual course of business, without notice of any defenses thereto, took the same, freed from all defenses thereto, and that under and by the said laws of the state of Pennsylvania the plaintiff took and now holds said paper free from all defenses thereto; that promissory notes payable to order or bearer, containing the words negotiable and payable without defalcation or discount at a bank in said state, were and are negotiable by indorsement, and by indorsement before due, for which, in good faith, the holder takes the same freed from all defenses thereto and set-off and cross demand."

2.   It is quite true there is no common law, strictly speaking, peculiar to the state of Pennsylvania or Indiana. Neither is the general law merchant one thing in Pennsylvania, and another in Indiana.   In applying the principles of the general law merchant to a contract, the law of the forum and of the place of the contract is the same.    "The whole current of authorities," said the court in *Piatt* v. *Eads* (1820), 1 Blackf. 81, "from the commencement of the history of our system of jurisprudence down to the present day, goes to establish the doctrine that the custom of merchants is and always has been regarded as a part of the common law of England; and that bills of exchange, both foreign and inland, are under its regulation.   It is a law of a general nature, and not local to that kingdom, and is there recognized and acknowledged by the courts as a part

of their system, from the circumstance of its universal application and use in all mercantile transactions throughout the commercial world; being in those cases a rule of decision to which all nations agreed, and of which all courts take notice."

3. As we have already observed, promissory notes at common law and under the law merchant were not, in this State, negotiable so as to be free from defenses in the hands of a *bona fide* holder; and that the note in suit, as it is not payable at a bank in this State, is not commercial paper under the law of this State. However, it seems that the law of the foreign state need not necessarily be statute law. Our statute (§484 Burns 1901, §476 R. S. 1881) provides that "the unwritten or common law of any other of the United States * * * may be proved as facts by parol evidence." In *Alford* v. *Baker* (1876), 53 Ind. 279, where the court had under consideration a note made in Kentucky, and payable at a bank in that state, it is said: "Where the law of another state, claimed to be different from the common law, is involved in a judicial proceeding in this State, it becomes matter of fact in such proceeding, and must be proved, and, indeed, alleged, unless the question arises in such a way as to render the pleading unnecessary. If, by any statute of Kentucky, or by the general course of the decisions of the courts of that state, such note is placed upon the footing of bills of exchange and governed by the law merchant, that fact might have been, but was not shown. Our statute makes provision for the proof both of the written and unwritten law of another state."

4. As the note was made in Indiana and payable in Pennsylvania, appellant, the maker, is liable according to the law of Pennsylvania. He is presumed to have contracted with reference to the law of that state. *Hunt* v. *Standart* (1860), 15 Ind. 33, 77 Am. Dec. 79; *Alford* v. *Baker, supra; Browning* v. *Merritt* (1878), 61 Ind. 425;

*Lindeman* v. *Rosenfield* (1879), 67 Ind. 246, 33 Am. Rep. 79; *Fordyce* v. *Nelson* (1883), 91 Ind. 447; *Kopelke* v. *Kopelke* (1887), 112 Ind. 435; *Sondheim* v. *Gilbert,* (1889), 117 Ind. 71, 5 L. R. A. 432, 10 Am. St. 23.

5.   We must presume, in the absence of proof to the contrary, that the common law prevails in Pennsylvania. However, a decision of the highest court of that state upon some branch of the common law may not be in harmony with the decisions in this State. But if the highest judicial tribunal of that state has declared that a note like that in suit may be taken by a good-faith purchaser for value freed from all defenses, that is the law of that state. And this would be true whether the decisions of that state were under a statute or not. A foreign court could question the decisions of the courts of this State upon any branch of the common law only upon the ground that it did not agree with the premises or the reasoning of the court. If the foreign court may question such a decision, it might question a decision of the courts of this State in interpreting one of its own statutes, but it is conceded that this the foreign court can not do. The foreign court is the only tribunal competent to decide upon the common or the statute law of its own state, and we fail to see any reason for permitting such decisions to be questioned in the one case, and not permitting them to be questioned in the other. The contract in question was made with reference to the law of the state where it was to be performed. "The law is a silent factor in every contract." *Long* v. *Straus* (1886), 107 Ind. 94, 57 Am. Rep. 87; *Foulks* v. *Falls* (1883), 91 Ind. 315.

6.   We think the complaint sufficiently pleads the law of Pennsylvania, and that, upon the theory that the note in suit is negotiable under the law of the place where it was to be paid, the pleading is good against a demurrer.

7.   Error is also assigned upon the court's sustaining the

demurrer to the second, third and fourth paragraphs of appellant's answer. The first paragraph of answer is the general denial. The second paragraph is substantially the same as the answer set out in the opinion on the former appeal. *Midland Steel Co.* v. *Citizens Nat. Bank* (1901), 26 Ind. App. 71. The third paragraph pleads in effect a failure of consideration. The fourth paragraph alleges that the note was given without any consideration. The fifth paragraph is substantially the same as the second, but concludes, "Wherefore, defendant says it did not execute said note, and that the same is not its act or deed," and is verified.

8. Upon the former appeal the complaint sought to recover upon the note as a non-negotiable instrument. In the case at bar the complaint shows that the note is negotiable under the law of Pennsylvania, and, as to its commercial qualities, is governed by the law of that state. The second and third paragraphs of answer upon the former appeal, which were substantially the same as they were here, were held sufficient. But the decision on the former appeal is the law of the case only in so far as the facts remain the same. *Eckert* v. *Binkley* (1893), 134 Ind. 614; *State, ex rel.,* v. *Christian* (1897), 18 Ind. App. 11. The second, third and fourth paragraphs of answer fail to allege that when appellee purchased the note it had notice of the facts pleaded in these answers as a defense. The complaint avers that before the note was due the payee sold and transferred it by written endorsement to appellee; that appellee purchased the note before maturity for a valuable consideration paid to the payee, in the usual course of business, and without notice of any defenses on the part of the maker. A defense by the maker, as against the original payee, is of itself insufficient, but should contain also a denial of appellee's want of notice, or some equivalent averment. *Bunting* v. *Mick* (1892), 5 Ind. App. 289; *Bradley, Holton &*

*Co.* v. *Whicker* (1899), 23 Ind. App. 380. See, also, *Sondheim* v. *Gilbert, supra; Second Nat. Bank, etc.,* v. *Morgan* (1895), 165 Pa. St. 199, 30 Atl. 957.

9. Appellant acknowledged service of notice that on a certain day appellee would, "before some officer authorized to take depositions," at a certain office in Chicago, Illinois, take the deposition of R. J. Beatty, to be used in evidence on the trial. The deposition was taken at the time and place named in the notice, before a notary public in Cook county, Illinois. The notary certifies that the witness was by her "first duly sworn according to law," that the deposition was reduced to writing by her, that it was taken at the time and place named in the notice, and that appellant attended the taking thereof by attorney. The certificate is signed by the notary, and the notarial seal affixed. It is argued that the motion to suppress the deposition and the objection to its introduction in evidence should have been sustained, because it does not appear that a notary public in Illinois has any authority to take depositions or administer oaths. There is no statement in the certificate that the notary has such authority.

A notary public is a public officer, and possesses certain powers under the common law by virtue of his office. We must presume that the common law exists in Illinois, and of the common-law powers of a notary we may take notice. But under the common law a notary had no authority to administer oaths. *Teutonia Loan, etc., Co.* v. *Turrell* (1898), 19 Ind. App. 469, 65 Am. St. 419; *Berkery* v. *Reilly* (1890), 82 Mich. 160, 46 N. W. 436; *Keefer* v. *Mason* (1865), 36 Ill. 406; *Trevor* v. *Colgate* (1899), 181 Ill. 129, 54 N. E. 909; Proffatt, Notaries, §24; John, American Notaries (2d ed.), §79. Nor has a notary at the common law any authority to take depositions. "The common law," said the court in *Burtt* v. *Pyle* (1883), 89 Ind. 398, "did not authorize a notary public to take depositions; such authority is conferred only by statute." The statute of this

State confers upon a notary, among others, the power to administer oaths generally, and to take and certify affidavits and depositions. §8039 Burns- 1901, §5964 R. S. 1881. And §8040 Burns 1901, §5965 R. S. 1881, makes the official certificate of a notary public in this State, attested by his seal, presumptive evidence of the facts therein stated in cases where by law he is authorized to certify such facts.

Section 464 Burns 1901, §460 R. S. 1881, provides: "Certificates or instruments, either printed or written, purporting to be the official act of a notary public of this State, of the District of Columbia, or of any other state or territory of the United States, and purporting to be under the seal and signature of such notary public, shall be received as presumptive evidence of the official character of such instrument and of the facts therein set forth." The certificate of the notary complies with the requirements of §434 Burns 1901, §430 R. S. 1881, and had the deposition been taken before a notary in this State, the certificate manifestly is sufficient. It is under the seal and signature of the notary, and this, under the statute, entitles it to be received as presumptive evidence of the official character of the instrument and also of the facts set forth in the certificate. The certificate states that the person before whom the deposition was taken is a notary public within and for Cook county, Illinois.

It is true we can not presume that a notary public in Illinois has authority to administer oaths and to take depositions. But under §422 Burns 1901, §418 R. S. 1881, is it necessary that a notary public should have authority under the laws of that state to take a deposition which is to be used in the courts of this State? That section provides: "Depositions of witnesses, taken within or without this State, may be taken, according to the regulations hereinafter provided, before any judge, justice of the peace, notary public, mayor or recorder of a city, clerk of a court of record, or com-

missioner appointed by the court to take depositions."
That is, the deposition of a witness may be taken without
the State before a notary public, if taken in compliance
with our statutory requirements. Formerly the statute
provided that when a deposition was to be taken within the
State no commission was necessary, but when taken out
of the State a commission should issue to the officer desig-
nated. 2 R. S. 1876, p. 143, §260. But the present statute
does not require a commission when the deposition is to be
taken within or without the State, if within the United
States, and requires a commission only when taken out of
the United States. §437 Burns 1901, §433 R. S. 1881.

A notary public is a public officer, not merely in the
state from which he receives his appointment, but an officer
recognized by all the states. His seal need not be authenti-
cated; it proves itself. The statute recognizes a notary
public in another state as an officer before whom a deposi-
tion may be taken. It has conferred upon him that author-
ity, and it is immaterial whether the foreign state has
conferred upon him such authority or not. If a court
should designate some one as a commissioner to take a
deposition in a foreign state, it would be immaterial
whether or not such foreign state had conferred authority
upon commissioners to take depositions. Such state might,
by designating before whom depositions could be taken,
exclude commissioners. But that would not affect the right
of the commissioner to act. The same is true of a notary
public designated by the statute. Our statute gives author-
ity to a notary to take a deposition, and to administer the
oath to the deponent. And by providing that a deposition
without the State may be taken before a notary public, the
statute confers upon the foreign notary the same authority
in the matter of taking a deposition as that given a resident
notary to take a deposition in this State. The statute re-
quires that such deposition shall be taken according to the
requirements of our statute, and the certificate shows that

this was done. See *Thompson* v. *Wilson* (1870), 34 Ind. 94; *Dumont* v. *M'Cracken* (1842), 6 Blackf. 355.

Counsel for appellant cite the case of *Teutonia Loan, etc., Co.* v. *Turrell* (1898), 19 Ind. App. 469, 65 Am. St. 419, as controlling in the case at bar. In that case it was held that whether a notary public in Ohio has power to take affidavits is a matter of which the courts of this State can not take judicial notice; and an affidavit in attachment taken by a notary in that state was held insufficient for the reason that no attempt had been made to comply with the statute (§483 Burns 1901, §475 R. S. 1881), which expressly provides how an affidavit taken in another state may be received and used in the courts of this State. We adhere to the decision in that case, but fail to see anything in it controlling in the case at bar which is governed by another and different statute.

Objection is made to certain evidence introduced, but, upon a careful consideration of the questions thus raised, we fail to find any reversible error. There was a trial by the court, a special finding of the facts, with conclusions of law; and, from the whole record, we think the case was fairly tried and determined upon its merits.

Judgment affirmed.