HARRINGTON, APPELLANT, *v.* BUTTE AND BOSTON MINING COMPANY ET AL., RESPONDENTS.

(No. 2,193.)

(Submitted December 4, 1905.   Decided December 18, 1905.)

*Negotiable Instruments — Holder in Due Course — Action Against Administrator—Trial—Evidence—Instructions.*

Trial—Administrators—Evidence—Exclusion—Waiver.
    1. In an action against the administrator of an estate to recover on negotiable paper, plaintiff's offered testimony was excluded as incompetent, under the provisions of section 3162 of the Code of Civil Procedure, as amended by Session Laws, 1897, page 245. Proof of decedent's testimony on a former trial was then introduced. The preservation of decedent's testimony had not been made to appear to the court up to the time of its introduction. *Held,* that by failure to renew

his offer after the court had been made cognizant of the preservation of decedent's testimony, plaintiff waived any error in excluding the testimony in the first instance.

Trial—Action Against Administrator—Witnesses.

2.   Section 3162 of the Code of Civil Procedure, as amended by Act of 1897 (Session Laws 1897, p. 245), which provides that parties to an action against an executor or administrator upon a claim against an estate of a deceased person cannot be witnesses, precludes plaintiff, in an action against the administrator of an estate to recover on negotiable paper, from testifying to transactions had with a third person, if the proof of such transactions tends to establish plaintiff's claim against the estate.

Negotiable Instruments—Indorsee in Due Course—Instructions.

3.   An instruction given in an action on negotiable paper, which told the jury that, where the holder took the paper under suspicious circumstances sufficient to put a reasonably prudent man upon inquiry, notwithstanding he had paid value for it, he could not recover, was erroneous, his ability to recover being dependent under section 4035, Civil Code, not upon the nonexistence of suspicious circumstances, but upon his good faith when he obtained possession of the paper as an indorsee in due course.

Instructions—Evidence—Invasion of Province of Jury.

4.   To instruct the jury that certain evidence proves a particular fact is erroneous, in that it invades the province of the jury.

Negotiable Instruments—Bad Faith—Instructions.

5.   An instruction which told the jury, in an action to recover on negotiable paper, that if there were any suspicious circumstances attending the purchase of the check in question, the holder was guilty of bad faith, and therefore could not recover, was erroneous, inasmuch as it was for the jury to determine, from the evidence relating to the circumstances surrounding the transaction, whether such evidence in fact proved bad faith.

Trial—Incomplete Instruction.

6.   An instruction which submits to the jury certain premises, but fails to state what conclusions might be drawn from such premises, is erroneous.

*Appeal from District Court, Silver Bow County; E. W. Harney, Judge.*

ACTION by Phil. J. Harrington against the Butte and Boston Mining Company and A. J. Leggat, administrator of the estate of John A. Leggat, deceased. From a judgment for defendants and from an order denying his motion for a new trial, plaintiff appeals. Reversed.

*Mr. C. M. Parr,* for Respondents.

*Messrs. Maury & Hogevoll,* and *Mr. J. E. Healy,* for Appellant.

Where the testimony of the deceased party has been preserved and may be used in evidence, the surviving party is competent to testify as to the matters included in the testimony. (*Stone* v. *Hunt,* 114 Mo. 66, 21 S. W. 454; *Hayden* v. *Grillo,* 42 Mo. App. 1; *Leahy* v. *Rayburn,* 33 Mo. App. 55; *Coble* v. *McClintock,* 10 Ind. App. 562, 38 N. E. 74.) Where the personal representative introduced evidence of damaging admissions made out in the presence of the deceased by the surviving party to a transaction, the latter may disprove or explain them by his own testimony. (*Smith's Appeal,* 52 Mich. 415, 18 N. W. 195; *Donlevy* v. *Montgomery,* 66 Ill. 227; *Cousins* v. *Jackson,* 52 Ala. 262; *Merrill* v. *Penny,* 43 Vt. 605.) In *Penn* v. *Oglesby,* 89 Ill. 110, it was urged that the survivor was not competent to contradict or explain the admission given in evidence because it was made in the lifetime of the decedent, but the court said the objection was not tenable. To the same effect is *Burham* v. *Mitchell,* 34 Wis. 118.

The testimony which was offered by Phil. Harrington was not to the terms of any transaction held between Harrington and Leggat in the lifetime of Leggat, but it was as to the terms and circumstances of a transaction between Wearth and Harrington. The rule of exclusion of a witness never goes further, as we contend, than to debar them from testifying concerning transactions had between the dead man and the living witness.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is the third time this case has been before this court on appeal. (*Harrington* v. *Butte & Boston Min. Co.,* 19 Mont. 411, 48 Pac. 758; 27 Mont. 1, 69 Pac. 102.) The action is upon a check for $2,500 issued by the Butte and Boston Mining Company to John A. Leggat, by Leggat indorsed generally and transferred to one Wearth, and by Wearth indorsed generally and transferred to this plaintiff, Harrington. The check was presented by Harrington to the First National Bank of Butte,

upon which institution it was drawn, payment refused, and this action resulted.

The defense pleaded is a want of consideration for the transfer of the check from Leggat to Wearth, and for the transfer from Wearth to Harrington. The cause was tried to the court sitting with a jury. A verdict for defendants was returned and judgment entered thereon, from which judgment and an order denying his motion for a new trial, the plaintiff appealed.

The record discloses that the check was received by Wearth from Leggat in settlement of a gambling debt, and that at the time he indorsed it Leggat was intoxicated, rendering his signature somewhat unnatural. Before the trial which resulted in the judgment from which this appeal is taken, Leggat died and his administrator was substituted.

Among others, the court gave to the jury instructions numbered 5 and 10, as follows: ''No. 5. In this case you are further instructed that although you may believe from the evidence, that the plaintiff actually paid for the check as testified to, and that he had no knowledge of the fact that the check was obtained from Leggat by Wearth without any consideration, still if you find from the evidence that the facts and circumstances surrounding the purchase of the check by plaintiff from Wearth, if you find he did purchase it, would have put a reasonable prudent man upon inquiry, and if the plaintiff failed to make such inquiry, such failure is equivalent to actual notice and he cannot recover.'' ''No. 10. If there is anything in a negotiable instrument to cast suspicion upon its character, the holder thereof, whether a holder for value, will be considered to have taken it under circumstances which render him guilty of bad faith, provided you may take into consideration all of the circumstances under which the plaintiff came into the possession of the check in question in determining whether or not he purchased it in good faith for value, and without notice of any fraud.''

Upon the trial the plaintiff was introduced as a witness in his own behalf, and by him it was sought to show his transaction

with Wearth by which he came into possession of the check. Objection was made that the testimony was incompetent under the provisions of section 3162, Code of Civil Procedure, as amended by an Act of the Fifth Legislative Assembly, approved February 19, 1897 (Session Laws, 1897, page 245). This objection was sustained and exception taken. Later in the course of the trial it developed that at a former trial of this cause Leggat had testified that his testimony had been preserved, and upon this trial proof of the testimony which he had given upon such former trial was introduced on behalf of the defendants.

It is claimed that the trial court erred in excluding the testimony of the plaintiff, for the reason that Leggat's testimony, taken at a former trial, had been preserved. But it is sufficient to say that this fact did not appear to the trial court at the time Harrington was introduced as a witness, and that after it did appear, the plaintiff did not renew his offer; so that, if there is the exception to the rule as claimed by the appellant, he did not bring himself within it.

It is also said that the rule is not so extensive in its operations as to preclude the plaintiff from testifying to transactions had with a third person, even if the proof of such transactions tends to establish the plaintiff's claim against the estate of the deceased person. But in this, we think, counsel for appellant is in error. The language of section 3162 above, as amended, is: "The following persons cannot be witnesses: * * * 3. Parties or assignees of parties to an action or proceeding or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator, upon a claim or demand against the estate of a deceased person, as to any matter of fact occurring before the death of such deceased person."

The principal question is presented by a consideration of instructions Nos. 5 and 10 above. The doctrine announced in No. 5 is, that even though Harrington paid value for the check and had no actual knowledge of the fact that Wearth obtained it from Leggat without consideration, still, if the facts and circumstances attending the purchase of the check by Harrington

from Wearth were such as to put a reasonably prudent man upon inquiry, and if Harrington failed to make such inquiry, such failure on his part was equivalent to actual notice by him of the want of consideration for the transfer by Leggat to Wearth, and he could not recover. This never has been the law of this state and is not now, and, with the exception of a few states, it has not been the rule in this country for nearly three-quarters of a century. At an early date in the last century the rule announced in No. 5 above did prevail in England (*Gill* v. *Cubitt,* 3 Barn. & C. 466), and to some considerable extent in this country, but was repudiated by the English courts in 1836 (*Goodman* v. *Harvey,* 4 Adol. & E. 870), and by most of the courts of this country about the same time, and, with few exceptions, has not been given countenance by the courts of this country since. The overwhelming weight of authority is against it. But, in addition to this fact, that rule is entirely inconsistent with the provisions of our Civil Code upon the subject. When, in an action upon a negotiable bill or note, the defense of want of consideration in its making or transfer is interposed, it becomes a question whether the holder is an indorsee in due course, and, if he is, there are no defenses, except payment to him, which can be successfully maintained against his claim. (Civil Code, sec. 4035.)

Who, then, is an indorsee in due course? Section 4034 of the same Code answers this inquiry as follows: "An indorsee in due course is one who, in good faith, in the ordinary course of business, and for value, before its apparent maturity or presumptive dishonor, and without knowledge of its actual dishonor, acquires a negotiable instrument duly indorsed to him, or indorsed generally, or payable to the bearer."

It appears from this record (first) that the check was indorsed by Wearth generally and transferred to Harrington; (second) that the instrument is a negotiable instrument; (third) that Harrington received it before its presumptive dishonor, and without knowledge of its actual dishonor; (fourth) that he received it in the ordinary course of business; and

(fifth), for the sake of this argument, we may say that Harrington paid value for it, although this is a disputed question of fact.

In order, then, for Harrington to put himself beyond the pale of the defense pleaded, as an indorsee in due course, it was only necessary for him to show good faith; so that, instead of suspicious circumstances sufficient to put a reasonably prudent man upon inquiry being the test of plaintiff's right to recover, the test provided by our Code is good faith. If the suspicious circumstances are of sufficient cogency, they may warrant the conclusion of the jury that the holder acted in bad faith in procuring the paper; but the test, nevertheless, is good faith. If Harrington acted in good faith in his transaction with Wearth—assuming the other five premises announced above—then the defense interposed is not available against him.

The rule is thus stated in 7 Cyc. 944: "The principle is now well established that neither a suspicion of defect of title, knowledge of circumstances which would excite such suspicion in the mind of a prudent man or put him on inquiry, nor even gross negligence on the part of the taker will affect his right unless the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith. In other words, the question is now one of good or bad faith, and not of diligence or negligence, except so far as the want of caution is material as bearing on the question of good faith, and suspicions or knowledge of facts which fall short of bad faith do not amount to notice." The authorities cited in support of the text are far too numerous to be reproduced here. The same doctrine is announced and authorities at great length cited, in 1 Daniel on Negotiable Instruments, fifth edition, sections 770-775.

It has been well said by the supreme court of Texas: "The ordinary rule of constructive notice which applies to the purchaser of property is not applicable in the case of negotiable instruments. As promotive of their circulation, a liberal view is taken, which makes the *bona fides* of the transaction the de-

cisive test of the holder's right.   He is entitled to recover upon it if he has come by it honestly.''   (*Wilson et al.* v. *Denton et al.,* 82 Tex. 531, 27 Am. St. Rep. 908, 18 S. W. 620.)

Instruction No. 10 above is erroneous, for two reasons: First, it is a flagrant invasion of the province of the jury for the court to say that particular evidence proves a particular fact, as this instruction does; second, it is wrong in saying that suspicious circumstances alone will defeat recovery.   The last half of the instruction, if standing alone, would correctly state the law; but, taken in connection with the first portion, the jury could draw but one conclusion, namely: if there were any suspicious circumstances attending the purchase of the check by Harrington, he was guilty of bad faith, and, as a result, could not recover.   While evidence of suspicious circumstances or gross negligence on the part of Harrington—if any there was—was admissible upon the question of his good or bad faith, it remains for the jury to say whether such evidence in fact proves bad faith.

As this case must go back for a new trial, attention is directed to instruction No. 3 as given, which also submits to the jury the same erroneous theory of the law as instruction No. 5, but is further defective in submitting to the jury certain premises, but failing to inform the jury what conclusions might properly be drawn from the premises announced.

Because of these errors, the judgment and the order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE MILBURN concurs.

MR. CHIEF JUSTICE BRANTLY, being disqualified, takes no part in the foregoing decision.