# WILSON ET AL., TRUSTEES, *v*. NATIONAL FOWLER BANK.

[No. 7,259. Filed May 31, 1911.]

1. APPEAL.—*Briefs.—Failure to Cite Authorities.—Excuse.—Rules.* —Appellants' failure to cite authorities to sustain their "points" is sufficiently excused by the assertion that they could find none, a substantial compliance with the rules being sufficient. p. 691.

2. BILLS AND NOTES.—*Consideration.—Gaming.—Bucket Shops.*— A note given in settlement of a wager or to cover losses in a bucket-shop speculation is invalid in the hands of the original parties thereto. p. 692.

3. BILLS AND NOTES.—*Illegal Consideration.—Enforcement.*—The law will not aid in the enforcement of a note the consideration for which is illegal. p. 693.

4. BILLS AND NOTES.—*Bucket-Shop Transactions.—Innocent Purchasers.*—Innocent purchasers of a negotiable note given for losses in a bucket-shop transaction may enforce it, there being no statute declaring such note void. p. 693.

5. BILLS AND NOTES.—*Bucket-Shop Transactions.—Answer.*—In an action by the purchaser of a negotiable note given for losses in a bucket shop, an answer that the note was so given is sufficient, and requires the plaintiff to reply the innocence of the purchase thereof. p. 693.

6. APPEAL.—*Sufficiency of Answer.—Waiver.—Bills and Notes.*— Where a demurrer was sustained to an answer in an action on a negotiable note, on the ground that the facts stated did not put the plaintiff upon inquiry as to the illegality of the consideration, and that is the only question urged on appeal, the sufficiency of the answer to require a reply of innocence in the purchase thereof is waived. p. 693.

7. BILLS AND NOTES.—*Innocent Purchasers.—Answer.*—An answer, in an action by the purchaser of a note, that the payee had an office within a few feet of the plaintiff bank, that his only business was to operate a bucket shop, that plaintiff knew thereof, that such payee was a regular customer of the bank, that he deposited the money used in such business with plaintiff, and checked it out, that the plaintiff made no inquiry as to the consideration of the note sued on, and that it knew that the payee had often advanced money to persons engaged in the bucket-shop business and that the note in suit was given to cover losses in bucket-shop transactions, does not show a bad-faith purchaser. pp. 693, 695.

8. BILLS AND NOTES.—*Possession.*—*Presumptions.*—The possession and production of a note by an indorsee raises a presumption that he is an innocent purchaser thereof. p. 694.

9. BILLS AND NOTES.—*Innocent Purchasers.*—In the absence of any infirmity upon the face of commercial paper, or circumstances to excite the suspicion of an ordinarily prudent person, the purchaser is not required to make any inquiry as to its validity. p. 694.

10. BILLS AND NOTES.—*Innocent Purchasers.*—*Purchase from Gambler.*—*Presumptions.*—The presumption that the purchaser of a note acted in good faith overcomes any inference of bad faith, derived solely from the purchase of the note from a known gambler. p. 695.

From Tippecanoe Circuit Court; *Richard P. DeHart,* Judge.

Action by the National Fowler Bank against Dewitt C. Wilson and another, as trustees of the estate of Noah Justice, an insolvent debtor. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*Charles E. Thompson* and *Wilson & Quinn,* for appellants.

*Edwin P. Hammond, William V. Stuart* and *Dan W. Simms,* for appellee.

MYERS, J.—On February 26, 1908, Noah Justice executed his unconditional promissory note for $1,052.50, payable at a bank in this State, to the order of E. A. Haney, with six per cent interest after date, and due in four months. Thereafter Haney indorsed it to appellee. On October 20, 1908, appellee filed said note, with an affidavit attached as to its correctness, with appellants, as trustees of said Noah Justice, an insolvent debtor, for allowance and payment as a claim against said insolvent's estate. On January 4, 1909, appellants disallowed said claim, and on the same day filed it, together with their objections thereto, with the clerk of the court below, and thereupon said claim was docketed as a cause for trial.

The action of the court in sustaining appellee's demurrer

for want of facts to appellants' amended third paragraph of answer is assigned as error. Whether the answer states facts sufficient to constitute a cause of defense is before us for consideration.

Appellee first insists that appellants' brief does not comply with rule twenty-two of the Supreme Court and this court, and for that reason this appeal should be dismissed. Appellants' brief does not technically comply with this rule, but they have substantially complied with it, and that is all that is required. They have stated their points under the heading "Points," but have cited neither cases nor authorities in support thereof, but excuse themselves for not so doing by the statement that they have been unable to find any decisions bearing directly upon the points presented. The contention of appellee, in support of its claim that this appeal should be dismissed, can not be sustained.

Appellants concede that appellee came into possession of the note in question before maturity, paying therefor full value; that said note was negotiable under the law merchant; that appellee purchased the note in no unusual manner, nor at an unusual time; but they do insist that the facts averred in the answer show that while appellee had no actual knowledge of any infirmities of the note, yet the facts surrounding its execution were of such a character as to put it upon inquiry as to the consideration for which the note was given, and its failure to make such inquiry, under the circumstances, amounted to bad faith in making the purchase, and deprived it of its right as an innocent purchaser under the law merchant.

The answer, in substance, shows that appellee knew that the original payee of the note had an office within a few feet of appellee's place of business; that his only business was operating a bucket shop; that appellee knew, by inspection, that a telegraph instrument and a blackboard were maintained in the office of the payee of said note, and were

used solely for the purpose of learning, and displaying for inspection by all persons so desiring, the ruling prices of stocks, grains, provisions and other commodities on the board of trade in the cities of Chicago and New York; that appellee knew that many persons patronized and paid said indorser large sums of money, the greater part of which was deposited with it to the credit of said indorser, the latter being a regular customer of the bank as a large borrower and by daily depositing and checking out large sums of money; that appellee, at the time of the purchase of said note, made no inquiry as to the consideration therefor, but relied entirely upon the solvency of the indorser and the maker, Noah Justice; that it knew at the time it purchased said note that said Noah Justice had for many years prior to the date of the execution thereof "many times advanced moneys to different persons engaged in bucket-shopping business" in LaFayette. It is averred that said note was executed by Justice to Haney in settlement for differences in the market prices quoted on the board of trade at the city of Chicago for commodities bought and sold by Justice of and from Haney between July 1, 1907, and February 26, 1908; that said transactions and sales were made with the understanding and intention on the part of both Justice and Haney that no actual delivery of the commodities bought and sold should be made.

As between the parties, a note given in settlement of a wager, or to cover losses arising out of a bucket-shop speculation as to future prices of grain or other commodi-

2. ties, where delivery of such grain or commodity is not contemplated by either party, is invalid, and the law will not enforce its payment, for the reason that its consideration rests in a transaction condemned by law, and for the further reason that it is contrary to public policy and void. Acts 1907 p. 488, §3837 Burns 1908; *Whitesides* v. *Hunt* (1884), 97 Ind. 191, 49 Am. Rep. 441; *Sondheim* v. *Gilbert* (1889), 117 Ind. 71, 5 L. R. A. 432, 10 Am. St.

23; *Plank* v. *Jackson* (1891), 128 Ind. 424; *Schmueckle* v. *Waters* (1890), 125 Ind. 265.

In the case at bar, the answer shows that the note had its inception in an illegal transaction, and that the immediate parties thereto were in *pari delicto,* consequently the law will not aid either in enforcing any claim against the other growing out of such transaction. *American Mut. Life Ins. Co.* v. *Mead* (1906), 39 Ind. App. 215, and cases there cited; *Whitesides* v. *Hunt, supra.*

But as there is no statute in this State making the note void in the hands of an innocent purchaser, such holder, by reason of the character of the paper, may enforce its payment against the maker, regardless of such infirmity. *Schmueckle* v. *Waters, supra.*

The fact that the note originated in an illegal transaction rendered the answer sufficient to withstand the demurrer, and to require a reply showing that the note was purchased in good faith and without notice of its illegality. *Schmueckle* v. *Waters, supra; Shirk* v. *Mitchell* (1894), 137 Ind. 185; *New* v. *Walker* (1886), 108 Ind. 365, 58 Am. Rep. 40; *Shirk v. Neible* (1901), 156 Ind. 66, 83 Am. St. 150; *State Nat. Bank* v. *Bennett* (1894), 8 Ind. App. 679; *Giberson* v. *Jolley* (1889), 120 Ind. 301; *First State Bank* v. *Hammond* (1904), 104 Mo. App. 403, 79 S. W. 493; *Chapman* v. *Snyder* (1901), 1 Neb. (Unofficial) 230, 95 N. W. 346; *McGill* v. *Young* (1902), 16 S. Dak. 360, 92 N. W. 1066. But we are not asked to hold the answer good on that theory, and for that reason we refuse to disturb the judgment on that ground. The parties, by so framing their pleadings, and by adroitly prepared briefs, have endeavored to control and limit our consideration to the single question: Do the facts pleaded overcome the presumption of good faith on the part of appellee, and create the legal presumption that it acted in bad faith in failing

to make inquiry regarding the consideration of the note? Or to state the question more nearly in line with the decisions, it is not whether the indorsee might have ascertained or could have known that the consideration of the note was illegal, but, Are the facts averred sufficiently pointed and emphatic as to lead directly and irresistibly to the conclusion that the purchaser in fact had such notice, or purposely refrained from making inquiry which would have resulted in such knowledge? If so, good faith is overthrown and bad faith is shown. *Tescher* v. *Merea* (1889), 118 Ind. 586; *Hankey* v. *Downey* (1892), 3 Ind. App. 325; *State Nat. Bank* v. *Bennett, supra,* p. 684; *Shirk* v. *Neible, supra; Kanawha Valley Bank* v. *Ohio, etc., Furniture Co.* (1905), 57 W. Va. 625, 50 S. E. 880, 70 L. R. A. 312; *Harrington* v. *Butte & Boston Mining Co.* (1905), 33 Mont. 330, 83 Pac. 467, 114 Am. St. 821; *Merritt* v. *Dewey* (1904), 115 Ill. App. 503; *Batesville Bank* v. *Lehner* (1909), 43 Ind App. 457.

The note in suit is governed by the law merchant. It is in the hands of an indorsee, and is conceded to show no infirmity upon its face. Its possession and production raises a presumption that it came into the hands of the holder "in the usual course of business, for value, without notice of any defect in the consideration." *Sondheim* v. *Gilbert, supra; Citizens Bank* v. *Leonhart* (1898), 126 Ind. 206; *Fisher* v. *Fisher* (1888), 113 Ind. 474; *Tescher* v. *Merea, supra.* In the case last cited it is said: "Commercial paper is regarded with favor on account of its convenience in mercantile affairs, and so the rule is that nothing short of fraud or bad faith, not even negligence, is sufficient to defeat the right of a holder for value and without notice to recover."

The rule seems to be that, in the absence of any infirmity appearing upon the face of commercial paper, or circumstances under which it is presented for sale and purchase to excite the suspicion of a person of ordinary prudence, the purchaser would not be called upon to

make inquiry of the maker or holder as to the facts under which such paper was executed. *Citizens Bank* v. *Leonhart, supra; Pope* v. *Branch County Sav. Bank* (1889), 23 Ind. App. 210. "Circumstances calculated to awaken suspicion merely are not sufficient," nor is it a question of negligence or diligence, but one of honesty and good faith. *Tescher* v. *Merea, supra.*

Again referring to the facts applicable to the question under consideration, they may be stated as follows: That appellee, at the time it bought the note in question, knew that the payee thereof was running a well-equipped bucket shop, which was well patronized, and that it made no inquiry regarding the consideration for the note; that said payee was a customer of the bank, borrowing and handling large sums of money, daily depositing and checking on such deposits; that the maker of the note for many years prior to the execution thereof "many times advanced moneys to different persons engaged in bucket-shopping business." It does not appear for what purpose Justice made these advancements, nor does it appear that appellee at any time had any notice or knowledge that Justice ever made any deals or trades, or transacted any business with any bucket-shop operator, other than the information furnished by the note. If he advanced money to them, such transactions might have been perfectly legitimate. *Plank* v. *Jackson, supra; Sondheim* v. *Gilbert, supra.* If this answer is to be upheld, it must be solely upon the ground of appellee's knowledge of the business in which the payee of the note was engaged, and this is not enough to overcome the presumption that appellee, in purchasing the note, acted honestly and in good faith.

For the reasons stated, the judgment is affirmed.