## STATE BANK OF GREENTOWN *v.* LAWRENCE.

[No. 22,090. Filed January 3, 1912. Rehearing denied May 9, 1912.]

1. BILLS AND NOTES.—*Consideration.—Note Executed for Medical Services of Unlicensed Practitioner.—Unenforceable.*—Where a note is executed to one not licensed to practice medicine in this State as provided by §8410 Burns 1908, Acts 1897 p. 255, for medical services to be performed by him, the consideration is illegal and the note is not enforceable in his hands. p. 519.

2. BILLS AND NOTES.—*Illegal Consideration.—Innocent Holder.*—A note executed to an unlicensed practitioner for medical services

to be rendered by him is not void in the hands of an innocent holder who purchased it for value before maturity. p. 519.

3. BILLS AND NOTES.—*Duty of Purchaser.*—*Sale Under Suspicious Circumstances.*—Persons dealing in commercial paper are required to use reasonable diligence where the paper is offered for sale under circumstances calculated to excite the suspicion of a reasonably cautious person. p. 519.

4. BILLS AND NOTES.—*Innocent Holder.*—*Failure to Inquire Into Suspicious Circumstances.*—A purchaser of a note who refrains from making inquiry, lest he should thereby become acquainted with the transaction out of which it originated, is not a holder in good faith without notice. p. 519.

5. BILLS AND NOTES. — *Consideration.* — *Bona Fides Purchase.* — *Burden.*—Where the illegality of the consideration of a note is shown, the burden is on the holder to show that it was purchased in good faith, without notice. p. 520.

6. BILLS AND NOTES.—*Bona Fide Purchaser.*—*Evidence.*—In an action by a bank against the maker on a promissory note which it purchased from the payee before maturity, where the evidence showed that the officers of the bank at the time of purchasing the note knew or believed that the payee was a Chicago eye specialist, that the bank had handled a number of notes for him, some of which the officers knew had been given by persons for spectacles and for fitting eyes, that the officers of the bank did not know him to have any profession or business in Huntington county, other than that of an eye specialist, and no facts were disclosed by the evidence that would have warranted him in practicing in Huntington county, even if licensed to practice in Chicago, and the note on its face showed that the maker's post office address was in Huntington county, plaintiff was, in the exercise of ordinary care, under the legal duty to inquire into the consideration of the note, and no inquiry having been made, a verdict for defendant will not be disturbed. pp. 520, 523.

7. BILLS AND NOTES.—*Note Executed to Unlicensed Physician.*—*Defense.*—*Evidence.*—*Prima Facie Case.*—In an action by the holder on a promissory note purchased before maturity, and which was alleged by defendant, who resided in Huntington county, to have been executed for medical services rendered by an unlicensed physician, where the evidence introduced by defendant showed that the payee had no license to practice in Huntington county, and that he was a resident of Chicago, Illinois, it was sufficient to prove. *prima facie*, the allegation that the payee of the note was unlicensed. p. 523.

8. APPEAL.—*Harmless Error.*—*Verdict.*—Where it appears that error committed by the trial court could not have affected the verdict, the judgment will not be reversed. p. 523.

From Huntington Circuit Court; *J. T. Alexander,* Judge.

Action by the State Bank of Greentown against Charles Lawrence. From a judgment for defendant, the plaintiff appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Affirmed.*

*Watkins & Butler* and *Blacklidge, Wolf & Barnes,* for appellant.

*John Q. Cline* and *Claude Cline,* for appellee.

MORRIS, C. J.—Suit by appellant, on note, for $120, executed by appellee, on September 12, 1905, to W. A. Magee, due one year after date, payable at a bank of Hammond, and indorsed by Magee, and delivered to appellant before maturity.

Several paragraphs of answer were filed, among which was one alleging that the note was procured by fraud, and another that the sole consideration of the note was medical services rendered by Magee, who, at the time, had no license to practice medicine.

There was a trial by jury, resulting in a verdict and judgment for defendant.

Appellant filed a motion for a new trial, in which 142 causes therefor were alleged. This motion was overruled, and this action of the lower court is the only error assigned here.

Appellee claims that the verdict is fully sustained by undisputed evidence, and that the judgment should be affirmed, regardless of intervening errors, if any.

The uncontroverted facts are, that for some years prior to September, 1905, the payee of the note, "Doctor" W. A. Magee, was a resident of Chicago, Illinois, and claimed to be a medical and surgical specialist. He had no license to practice in Indiana. He carried on an extensive system of swindling operations in a number of counties in Northern Indiana. His scheme was somewhat similar to the

Bohemian oats swindle, which was used extensively in this State some years ago.

The "doctor's" plan was to call on people in the country who were in ill health, and assure them that he could cure them in a definite time, the patient to execute to him a note, due at the end of such time, for the treatment, and he to execute a written agreement to return the note when due, if no cure were effected. He then sold the note before maturity.

When the note in issue was executed, Magee was driven to appellee's farm residence in Jefferson township, Huntington county. Appellee was lying on a couch. Magee told him he was from Chicago, and was a specialist, with a capital of $175,000; that he was out on a vacation, advertising his business, and had heard appellee was ill. He examined appellee and told him he had catarrh and kidney trouble, and was in a very dangerous condition, and would soon be beyond relief; that he could cure appellee in one year.

Appellee's wife was present, and the "doctor" found her also in great need of his treatment. For $120 he agreed to visit appellee and wife once each month for a year, to furnish them medicine to take and to insure a cure. As a result of his solicitation, appellee executed this note, and Magee gave appellee a written agreement signed by himself, by the terms of which the note was to be returned to him in case appellee and his wife were not cured within the year.

They never saw the doctor again. He sent them medicine, which they took for some time. Each time they took it, however, it made them worse. Finally, after about eight months, they quit taking Magee's medicine, called in a local physician, who prescribed for them, and their ailments readily yielded to his treatment.

Shortly after the note was executed, Magee sold and indorsed it to appellant for $108.

When the note was executed, the practice of medicine

without a license was prohibited in this State, under penalty of fine. §8410 Burns 1908, Acts 1897 p. 255. Consequently the note in the hands of Magee was not enforceable, because the consideration therefor was an illegal one.

The bank purchased the note before maturity, for value. The note was not void. In the hands of an innocent holder, it was enforceable. *Schmueckle* v. *Walers* (1890), 125 Ind. 265, 268, 25 N. E. 281.

Appellee claims, that if it be conceded that appellant had no actual notice of the note's infirmity, the uncontroverted evidence discloses such facts as legally put appellant on inquiry into its consideration, and if inquiry had been made, appellant could not have failed to discover the illegality of the consideration, and fraud in its procurement.

The law is well settled in this State that persons dealing in commercial paper are required to use reasonable diligence where the paper is offered for sale under circumstances that are calculated to excite the suspicion of a reasonably cautious person. *Citizens Bank* v. *Leonhart* (1890), 126 Ind. 206, 25 N. E. 299; *Giberson* v. *Jolley* (1889), 120 Ind. 301, 22 N. E. 306.

Where the circumstances show that the purchaser refrained from making inquiry, lest he should thereby become acquainted with the transaction out of which the note originated, he cannot occupy the position of a holder in good faith without notice. *Schmueckle* v. *Waters, supra; Shirk* v. *Neible* (1901), 156 Ind. 66, 59 N. E. 281, 83 Am. St. 150; *Coffin* v. *Anderson* (1837), 4 Blackf. 395, 408.

In *State Nat. Bank* v. *Bennett* (1894), 8 Ind. App. 679, 36 N. E. 551, that court said of the above doctrine: "The rule thus laid down we regard as an extremely equitable and salutary one. No man should be permitted to wilfully close his eyes and then excuse himself upon the ground that he did not see."·

When the illegality of the consideration of the note was shown, the burden devolved on appellant to show the purchase was made in good faith, without notice. *Schmueckle* v. *Waters, supra.*

It is shown by the evidence that appellant bank was located in Greentown, Howard county; that it was organized in 1903, and was the successor of the Commercial Bank, a private institution, which had transacted business in the same building since 1896. In the latter year, Frank R. Hill became cashier of the old bank, and continued as such until the reorganization in 1903, since which time he has been appellant's cashier. Doctor S. T. Murray was president of appellant bank since its incorporation. Both Murray and Hill were directors.

In this case, the note was offered for sale to the cashier, who consulted the president about it. After consultation, these officers investigated appellee's solvency, through the auditor of Huntington county and the Bank of Warren, in the same county. The president and cashier then purchased the note for the bank. No inquiry was made except as above stated. The bank frequently purchased commercial paper, and the purchases were always made by Hill and Murray.

At the trial, which occurred in 1908, Doctor Murray testified that before he became president of the bank, he, for many years, practiced medicine in Greentown and vicinity, and was a member of the Howard County Medical Association. "Doctor" Magee was not a member of the society. About six years ago the witness heard, through his patients, that Doctor Magee, a traveling specialist from Chicago, was practicing in that vicinity, and since that time Magee has made frequent visits there. Did not become acquainted with him personally until after he became president of the bank, when he was introduced to him by the bank's bookkeeper at the bank as "Doctor Magee." Witness knew Magee as a Chicago specialist, and did not know that he had any other profession or business in that vicinity.

Hill, the cashier, testified, in substance, as follows: About six or eight years ago Doctor Magee had a note which, I think, was purchased by the Commercial Bank. In this note the name of Magee, as payee, was printed, and there was also printed therein "The Commercial Bank of Greentown" as the place of payment. "I told him that we would not allow any body like that to use our name in a blank." He got it printed without our consent. The above note had a perforated edge, but I did not suspect that a contract might have been torn off where the edge was perforated, and made no inquiry. This note was signed by one Runyan. The Commercial Bank had two of the Magee notes signed by a Mrs. Burns, and, I think, also by her son. Mrs. Burns has been dead three or four years. The son did tell me his mother had been swindled by Magee, but this conversation "I think" was after the Lawrence note was purchased. We had for collection a Magee note on Frank Kilander for $60. Settled it for $30 or $35. Authorized to do so by Magee. I proposed the compromise, because I did not regard Kilander as entirely solvent. I have no recollection that Kilander told me that Magee had swindled him. We collected a good many Magee notes. We bought a number of his notes, and sent them to other banks for collection. I thought Magee was an eye specialist. "In 1903 or 1904 * * * he always carried a case like that—he told me if I had any trouble with my eyes or anything * * * needed an operation or anything like that, he would make me a price. And he exhibited his case, and I told him my eyes didn't need anything like that at all." Magee came to the bank frequently, before and after 1903. He occasionally loafed, without invitation, in the space inclosed in the bank by the railing. He was at my residence three or four times as a visitor. Once he was a guest there at supper. He was greatly interested in my little boy. At one time, about when

the note in issue was purchased, a loan of $200 was made to Magee by the bank, and he assigned several notes, aggregating $800 or $900 in face value, as collateral, for the loan. These notes were in various amounts, ranging from $40 to $75, and were executed by various persons, some of whom lived in Grant, Huntington and Wells counties. Some of these notes were good, others bad. The bank employed a collector to collect them, and told him to get what he could on them. The bank had authority to compromise them, and got enough on them to pay the $200 note. Don't recollect when the note in issue was purchased, but think in September, 1905. Knew that some of the notes handled by the bank were given "for spectacles and fitting their eyes. I have known people to pay as high as $120 for having their eyes treated and spectacles fitted." Thought the notes handled were given, some for having spectacles fitted, and others for treatment of the eyes and fitting also.

The officers of the bank knew, or believed, that Magee was a Chicago specialist, and that he was offering to treat eyes and perform operations thereon, and that some of the notes handled by the bank were given for the treatment of eyes. They knew he called himself a doctor. The treatment of the eyes, either by medicine, or by surgical operation, is prohibited by our statute, unless the physician or surgeon is licensed. §§8401, 8405, 8409, 8410 Burns 1908, Acts 1897 p. 255, Acts 1901 p. 475. Section 8408 Burns 1908, Acts 1899 p. 247, prescribes under what contingencies a physician or surgeon, licensed in another state, may practice here. The evidence does not disclose any fact that would have warranted Magee in practicing in Huntington county, even if he had a license to practice in Chicago. The note in suit shows on its face that appellee's postoffice address was in Huntington county.

The evidence introduced by appellee showed that Magee had no license to practice in Huntington county, and that

7. he was a resident of Chicago, Illinois. This was sufficient to prove, *prima facie,* the allegation that Magee was unlicensed. *Melville* v. *State* (1910), 173 Ind. 352, 89 N. E. 490, 90 N. E. 467; *Witty* v. *State* (1910), 173 Ind. 404, 90 N. E. 627, 25 L. R. A. (N. S.) 1297.

There was no evidence tending in any way to show that Magee had a license to practice medicine or surgery anywhere.

8. Section 700 Burns 1908, §658 R. S. 1881, provides that no judgment shall be reversed, where it appears that the merits of the cause have been fairly tried and determined in the court below. We think that statute is applicable here. Whatever errors, if any, were committed by the trial court, could not have affected the verdict.

6. Appellant, under the facts disclosed by the evidence of its president and cashier, who bought the note, was, in the exercise of ordinary care, under the legal duty to inquire into the consideration of the note. No inquiry was made. Such inquiry would have resulted in disclosing the illegality of the consideration.

Judgment affirmed.

NOTE.—Reported in 96 N. E. 947. See, also, under (1) 7 Cyc. 747; 2 Ann. Cas. 605; (2) 8 Cyc. 45; 44 Am. Dec. 698; 9 Am. Dec. 272; (3) 7 Cyc. 943; 29 L. R. A. (N. S.) 351; (4) 7 Cyc. 944; (5) 8 Cyc. 236; (6) 1913 Cyc. Anno. 899; (7) 8 Cyc. 283; (8) 3 Cyc. 383.