HILL *v.* CAMPBELL ET AL.

[No. 13,519.   Filed January 31, 1930.]

688

*Fred L. Bodenhafer* and *Redmond & Emerick*, for appellant.

*Luke H. Wrigley* and *Vermont Finley*, for appellees.

NICHOLS, J.—Action on a promissory note, the validity of which involves the interpretation of the acts of the General Assembly of 1920 (Spec. Sess.) p. 83, being chapter 26, commonly known as "the Blue Sky Law," and the Negotiable Instruments Act (§§11360-11555 Burns 1926).

The complaint, in one paragraph, alleged, in substance, that appellees were partners doing business under the firm name of "Campbell & Fetter, Bankers," and that, on February 27, 1924, appellant executed to one Eaton a certain promissory note for $37.50 due August 1, 1924, with attorney's fees, and without relief from valuation and appraisement laws, a copy of such note, which is in the usual form of such negotiable instruments, being filed with the complaint. It is further averred that prior to August 1, 1924, said Eaton transferred and assigned such note to appellees by indorsing on the back of such note the following: "W. E. Eaton."

Appellant filed an answer in three paragraphs, the first was a denial, the second, in substance, alleged that appellant admitted the execution of the note sued upon and that such note was indorsed by appellees, and then alleged that such note and the consideration therefor were illegal and void, in that, at the time of the exe-

cution thereof, and prior and subsequent thereto, Eaton was the owner of and engaged in conducting a hardware store in South Milford, Indiana, in the name of "South Milford Hardware Company"; that, as the sole inducement to appellant to execute such note, Eaton, in the name of "South Milford Hardware Company;" executed and delivered to appellant a certain written agreement, designated by him as a "Profit Sharing Certificate," in the words and figures following:

"No. 86

"Profit Sharing Certificate.

"This Is To Certify That Hill Brothers is the owner of this certificate, which entitles him to one-half (½) of the profit on anything purchased from the South Milford Hardware Company, its successors or assignors, for a period of ten years, from the date of this certificate.

"It is further understood that the owner of this certificate will be listed on our service file, which will enable him to receive the very best of service and repair parts quickly.

"All purchases are to be either cash or note in order to receive the share of profit. Thirty days to be considered the same as cash.

"The ownership of one of these certificates does not in any way entitle the holder to any voice or say as to the management of the store, which is not a stock company or an incorporation, but is to be operated in the usual manner by its owners.

"Dated at South Milford, Indiana, February 27, 1924.

"The South Milford Hardware Company.
"By W. E. Eaton

"$75.00

"Agreement. South Milford, Ind. Feb. 27, 1924.

"This is to certify that we have on this date sold to Hill Brothers Profit-Sharing Certificate No. 86 and have accepted as payment note for $37.50 given for nine months with the understanding that

at the end of nine months, if the profits saved by said party are not sufficient to pay said note, it is to be renewed for the difference until said note is paid.

"The South Milford Hardware Co.
"By W. E. Eaton,
"W. H. Pletcher."

Said second paragraph also alleged that, prior and subsequent to the execution of such profit-sharing certificate and the note sued upon, Eaton was, by means of agents, personal solicitation and representations, and advertisements, selling and offering to sell to the people of Noble and LaGrange counties certificates of the same identical character as that sold to appellant, and sold large numbers of such certificates, and collected and received a large number of notes and moneys from the citizens of such counties for like certificates; that he was the issuer of such certificates, and was not duly licensed under the laws of Indiana to sell and to issue such certificates, and, in particular, the certificate issued to appellant, but, on the contrary, he unlawfully and without being licensed so to do, and in violation of the criminal laws of Indiana, issued and sold such stock certificate without first making application to the Secretary of State and to the Securities Commission for license, authority and permission to sell such certificate; that such certificate, agreement and note are, under the laws of the state regulating the sale of securities, wholly illegal and void. Wherefore, appellant demanded judgment.

The third paragraph of answer averred the same general facts as the second, and, in addition, that such hardware company, through Eaton, sold said certificates for the purpose of raising money with which to operate said hardware business, and that the money so received was used in such operation, and such certificates were sold to raise capital to run such business without selling stock, and were thus issued and sold instead of stock in

such hardware company; that appellant does not know whether such hardware company was a firm or corporation, or whether such business was simply conducted by said Eaton under the name and style of "South Milford Hardware Company," but that the business was transacted by said Eaton, and that neither said Eaton nor said hardware company, nor anyone on his or its behalf, either before, at the time, or since the sale of such certificates, complied with the laws of the State of Indiana with reference to the selling of securities, and that Eaton transacted the business and made the sales to appellant, all in utter disregard of and in violation of the Acts of the General Assembly of Indiana of 1920 (Spec. Sess.) beginning at page 83, and the further acts of such assembly supplementary thereto and amendatory thereof.

The fourth paragraph, after the general facts, averred that Eaton agreed with appellant, as a part of the consideration for such note, that he, the said Eaton, would continue to operate such business until such note was paid and would hold and retain it until paid, or that the successors of such Eaton in business would perform all the agreements so made by him with appellant, and that he would not sell, indorse or transfer such note; that Eaton, in violation of said agreement, and in fraud of appellant, sold and transferred such note to appellees, and that appellant received no profits whatever under such agreement with Eaton, and that, in violation of such agreement, he sold and transferred such hardware business, without requiring the vendee to assume the performance of such agreement with appellant; that, by reason thereof, the consideration for such note has wholly failed.

A fifth paragraph of answer, after the general facts, alleges further that the note sued upon was given solely in consideration of said profit-sharing certificate and agreement, and that appellant made no purchases what-

ever from Eaton and received no credits, and was entitled to no credits whatever on such note as set forth in said certificate and agreement; that Eaton, in violation of said agreement and in fraud of appellant, sold and transferred said note to appellees and sold and transferred said hardware business, without requiring the vendee thereof to assume performance of said contract and agreement, and that his assignee and transferee of said business refused to perform said contract; that, by reason thereof, the consideration for such note has wholly failed; that appellees purchased such note and took an assignment thereof with full notice and knowledge of the consideration of such note and of the facts therein alleged. To the fifth paragraph of answer, appellees filed a reply in general denial.

The court sustained appellees' demurrer respectively to appellant's second, third and fourth paragraphs of answer. There was a trial by jury, which returned a verdict in appellees' favor, pursuant to a written instruction given by the court, for $87.50. Appellant's motion for a new trial was overruled and judgment was rendered on the verdict, from which this appeal.

The errors relied upon for reversal are the court's action in separately and severally sustaining appellees' demurrers respectively to the second, third and fourth paragraphs of answer, and in overruling appellant's motion for a new trial.

Appellant, presenting that the court erred in sustaining appellees' demurrer to his second and third paragraphs of answer, contends that the note sued on is void because it was given for the profit-sharing certificate above set out, which, as he contends, was issued in violation of what is commonly known as "the Blue Sky Law" of 1920, as amended in 1921. Acts 1920 (Spec. Sess.) ch. 26, p. 83; Acts 1921, ch. 102, p. 240. These acts make it unlawful to sell any securi-

ties in the state without first complying with the requirements of the acts. Section 16 of the act of 1920, which was not amended by the act of 1921, provides: "The term 'securities' as used in this act shall be construed to mean stocks, bonds, debentures, stock certificates, collateral trust certificates or any other security of any kind or character evidencing title to or interest in property." Appellant's contention that the profit-sharing certificates here involved come within the last provision of such §16, to wit: "any other security of any kind or character evidencing title to or interest in property," needs no argument to refute it. The language of the act needs no interpretation. That the Legislature did not so understand the section is evidenced by the fact that by ·§3 of the Act of 1925, defining the term "security," a long list of specific securities is included, among which is "certificate of interest in profit-sharing agreement," which was not mentioned in said §16. It is to be observed that §23 of the 1925 act does not repeal the 1920 act nor the 1921 act as to contracts theretofore made, nor as to suits then pending.

Following this contention, appellant next contends that the note in suit having been given for a security, as appellant says, in violation of law, is itself void in the hands of a purchaser in good faith, before maturity and for value, but he is unfortunate in his citation of authorities to sustain his proposition, for none of them do so.

In *Sondeim* v. *Gilbert* (1888), 117 Ind. 71, 77, 18 N. E. 687, 5 L. R. A. 432, the court stated that: "The authorities justify a statement that a defendant may insist upon the illegality of the contract or consideration, notwithstanding the note is in the hands of an innocent holder for value, in all those cases in which he can point to an express declaration of the Legislature that the illegality insisted upon shall make the security, whether contract, bill or note, void. But, unless the Legislature has so

declared, then, no matter how illegal or immoral the consideration may be, a commercial note in the hands of an innocent holder for value will be held valid and enforceable."

In the acts here involved, the Legislature has not so declared. In *New* v. *Walker* (1886), 108 Ind. 365, 9 N. E. 386, 58 Am. Rep. 40, it was held that a promissory note taken in violation of a statute was void as between the parties and as to one who buys with notice that it was given in such violation, unless he shows that his indorser was a good-faith purchaser. It was further held that the statute there involved did not, either expressly or by implication, declare a note taken by a vendor who had not complied with the law to be void, and that where a negotiable note is executed to such person, it was valid in the hands of an innocent holder.

In *Hill* v. *Ward* (1910), 45 Ind. App. 458, 91 N. E. 38, while it was held that business transactions in violation of law cannot be made the foundation of valid contracts, and a recovery for services rendered thereunder cannot be had, it was also held that a note given for medical services rendered by one without a license, in violation of the statute, is a part of an illegal transaction, and the second indorsee, suing on the note, has the burden of showing that his indorser was a good-faith purchaser. In the instant case, the evidence is undisputed that appellees were good-faith purchasers.

In *Beecher* v. *Peru Trust Co.* (1912), 49 Ind. App. 184, 97 N. E. 23, the action was to restrain appellee from transferring by sale or indorsement a promissory note payable at a bank in the state and given for stock feed sold in violation of law, thereby preventing the note from passing into the hands of an innocent purchaser.

In *Bright Nat. Bank* v. *Hartman* (1915), 61 Ind. App. 440, 109 N. E. 846, it was held that, where fraud or illegality in the execution of a note is set up as a defense

to the suit of an indorsee, the burden is on him to show his protection from such defense as a *bona fide* purchaser for value before maturity.

In *Harris* v. *Clark* (1924), 81 Ind. App. 494, 142 N. E. 881, the action was between the original parties, being by appellees to recover attorney fees alleged to have been rendered.

These are all the Indiana authorities cited by appellant, and it is apparent that none of them sustains his contention. Though it be conceded that the note in suit was given for a security issued in violation of the "Blue Sky Law," of 1920, as amended in 1921, still it was not void, and might be enforced by a holder thereof in due course. *Rainier* v. *LaRue* (1925), 83 Ind. App. 28, 147 N. E. 312; *Wilson* v. *National Fowler Bank* (1911), 47 Ind. App. 689, 95 N. E. 269; *Schmueckle* v. *Waters* (1890), 125 Ind. 265, 268, 25 N. E. 281; *State Bank, etc.*, v. *Lawrence* (1912), 177 Ind. 515, 96 N. E. 947, 42 L. R. A. (N. S.) 326.

It is clear from a casual reading of the fourth and fifth paragraphs of answer that they were each upon the theory of a failure of consideration. By the averments of these paragraphs, the consideration for the execution of the note was an agreement as to things thereafter to be done by Eaton, which agreement, it is averred, he failed to keep. To maintain such a defense, the burden was upon appellant to aver and prove that appellees took the note with notice of such defense. *Wheat* v. *Goss* (1923), 193 Ind. 558, 141 N. E. 311.

There is some contention that there was but a conditional delivery of the note, but this does not appear either by averment or proof. Even if there were such averment and proof, in the absence of a verified answer of *non est factum*, it would not be available to appellant, for delivery is one of the essential

steps in the execution of a note. *Cincinnati, etc., Co. v. Chenoweth* (1899), 22 Ind. App. 685, 54 N. E. 403; *Isgrig v. Franklin Nat. Bank* (1913), 53 Ind. App. 217, 101 N. E. 398. The court did not err in its ruling on the demurrers.

It appears by uncontradicted evidence that, before the purchase of the note in suit, along with others, appellees made inquiry as to what the consideration therefor was, and were told that they were given for fencing, implements, and other things handled in a hardware store, and that appellees had no knowledge that Eaton was financing his business by the sale of profit-sharing certificates. There was evidence by one witness that appellee Campbell said to him that he was afraid they would have trouble with the notes because of the "Blue Sky Law," but it clearly appears that this statement was made after the notes had been purchased by appellees. Under the uncontradicted evidence in this case, appellees were entitled to recover, and the court did not err in instructing the jury to return a verdict for appellees.

Judgment affirmed.

Enloe, J., not participating.